COOPERS & LYBRAND *v.* LIVESAY ET AL.

No. 76–1836.  Argued March 22, 1978—Decided June 21, 1978

464

STEVENS, J., delivered the opinion for a unanimous Court.

*Thomas C. Walsh* argued the cause for petitioner. With him on the briefs were *Veryl L. Riddle, John J. Hennelly, Jr.,* and *Harris J. Amhowitz.*

*Melvyn I. Weiss* argued the cause for respondents. With him on the brief were *Lawrence Milberg, Jared Specthrie,* and *Richard L. Ross.*

MR. JUSTICE STEVENS delivered the opinion of the Court.

The question in this case is whether a district court's determination that an action may not be maintained as a class action pursuant to Fed. Rule Civ. Proc. 23 is a "final decision"

within the meaning of 28 U. S. C. § 1291[1] and therefore appealable as a matter of right. Because there is a conflict in the Circuits over this issue,[2] we granted certiorari and now hold that such an order is not appealable under § 1291.

Petitioner, Coopers & Lybrand, is an accounting firm that certified the financial statements in a prospectus issued in connection with a 1972 public offering of securities in Punta Gorda Isles for an aggregate price of over $18 million. Respondents purchased securities in reliance on that prospectus. In its next annual report to shareholders, Punta Gorda restated the earnings that had been reported in the prospectus for 1970 and 1971 by writing down its net income for each year by over $1 million. Thereafter, respondents sold their Punta Gorda securities and sustained a loss of $2,650 on their investment.

Respondents filed this action on behalf of themselves and a class of similarly situated purchasers. They alleged that petitioner and other defendants[3] had violated various sections of

---

[1] "The courts of appeals shall have jurisdiction of appeals from all final decisions of the district courts of the United States . . . except where a direct review may be had in the Supreme Court."

[2] Compare *Hackett* v. *General Host Corp.*, 455 F. 2d 618 (CA3 1972), cert. denied, 407 U. S. 925; *King* v. *Kansas City Southern Industries, Inc.*, 479 F. 2d 1259 (CA7 1973) (holding that such an order is not immediately appealable under § 1291), with *Hartmann* v. *Scott*, 488 F. 2d 1215 (CA8 1973); *Ott* v. *Speedwriting Pub. Co.*, 518 F. 2d 1143 (CA6 1975); *Eisen* v. *Carlisle & Jacquelin*, 370 F. 2d 119 (CA2 1966), cert. denied, 386 U. S. 1035 (holding that such an order is immediately appealable under § 1291).

[3] The other defendants, Punta Gorda and several of its officers and directors, also filed a petition for writ of certiorari in this Court. *Punta Gorda Isles, Inc.* v. *Livesay*, No. 76–1837. After we granted certiorari in this case and No. 76–1837, 434 U. S. 954, the parties entered into a tentative settlement agreement. Respondents and petitioners in No. 76–1837 agreed to dismiss that petition; petitioner in this case, however, did not stipulate to dismissal of its petition. In view of the tentative nature of the settlement, this case is not moot.

the Securities Act of 1933 and the Securities Exchange Act of 1934.[4] The District Court first certified, and then, after further proceedings, decertified the class.

Respondents did not request the District Court to certify its order for interlocutory review under 28 U. S. C. § 1292 (b).[5] Rather, they filed a notice of appeal pursuant to § 1291.[6] The Court of Appeals regarded its appellate jurisdiction as depending on whether the decertification order had sounded the "death knell" of the action. After examining the amount of respondents' claims in relation to their financial resources and the probable cost of the litigation, the court concluded that they would not pursue their claims individually.[7] The Court

---

[4] §§ 11, 12 (2) and 17 (b) of the Securities Act of 1933, 15 U. S. C. §§ 77k, 77l (2), and 77q (b) (1976 ed.), and § 10 (b) of the Securities Exchange Act of 1934, 15 U. S. C. § 78j (b) (1976 ed.).

[5] Section 1292 (b) provides:

"When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however,* That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order."

[6] Respondents also petitioned for a writ of mandamus directing the District Court to recertify the class. Since the Court of Appeals accepted appellate jurisdiction, it dismissed the petition for a writ of mandamus.

[7] "Plaintiffs, both of whom are employed, have an aggregate yearly gross income of $26,000. Their total net worth is approximately $75,000, but only $4,000 of this sum is in cash. The remainder consists of equity in their home and investments.

"As of December 1974 plaintiffs had already incurred expenses in excess of $1,200 in connection with this lawsuit. Plaintiffs' new counsel has estimated expenses of this lawsuit to be $15,000. The nature of this case will require extensive discovery, much of which must take place in Florida,

of Appeals therefore held that it had jurisdiction to hear the appeal and, on the merits, reversed the order decertifying the class. *Livesay* v. *Punta Gorda Isles, Inc.,* 550 F. 2d 1106.

Federal appellate jurisdiction generally depends on the existence of a decision by the District Court that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin* v. *United States,* 324 U. S. 229, 233.[8] An order refusing to certify, or decertifying, a class does not of its own force terminate the entire litigation because the plaintiff is free to proceed on his individual claim. Such an order is appealable, therefore, only if it comes within an appropriate exception to the final-judgment rule. In this

---

where most defendants reside. Moreover, the allegations regarding the prospectus and financial statements will likely require expert testimony at trial.

"After considering all the relevant information in the record, we are convinced that plaintiffs have sustained their burden of showing that they will not pursue their individual claim if the decertification order stands. Although plaintiffs' total net worth could absorb the cost of this litigation, 'it [takes] no great understanding of the mysteries of high finance to make obvious the futility of spending a thousand dollars to get a thousand dollars—or even less.' Douglas, *Protective Committees in Railroad Reorganizations,* 47 Harv. L. Rev. 565, 567 (1934). We conclude we have jurisdiction to hear the appeal." *Livesay* v. *Punta Gorda Isles, Inc.,* 550 F. 2d 1106, 1109–1110.

[8] For a unanimous Court in *Cobbledick* v. *United States,* 309 U. S. 323, 325, Mr. Justice Frankfurter wrote:

"Since the right to a judgment from more than one court is a matter of grace and not a necessary ingredient of justice, Congress from the very beginning has, by forbidding piecemeal disposition on appeal of what for practical purposes is a single controversy, set itself against enfeebling judicial administration. Thereby is avoided the obstruction to just claims that would come from permitting the harassment and cost of a succession of separate appeals from the various rulings to which a litigation may give rise, from its initiation to entry of judgment. To be effective, judicial administration must not be leaden-footed. Its momentum would be arrested by permitting separate reviews of the component elements in a unified cause."

case respondents rely on the "collateral order" exception articulated by this Court in *Cohen* v. *Beneficial Industrial Loan Corp.*, 337 U. S. 541, and on the "death knell" doctrine adopted by several Circuits to determine the appealability of orders denying class certification.

# I

In *Cohen,* the District Court refused to order the plaintiff in a stockholder's derivative action to post the security for costs required by a New Jersey statute. The defendant sought immediate review of the question whether the state statute applied to derivative suits in federal court. This Court noted that the purpose of the finality requirement "is to combine in one review all stages of the proceeding that effectively may be reviewed and corrected if and when final judgment results." *Id.,* at 546. Because immediate review of the District Court's order was consistent with this purpose, the Court held it appealable as a "final decision" under § 1291. The ruling had "settled conclusively the corporation's claim that it was entitled by state law to require the shareholder to post security for costs . . . [and] concerned a collateral matter that could not be reviewed effectively on appeal from the final judgment." [9]

To come within the "small class" of decisions excepted from the final-judgment rule by *Cohen,* the order must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment.[10] *Abney* v. *United States,* 431 U. S. 651, 658; *United States* v.

---

[9] *Eisen* v. *Carlisle & Jacquelin,* 417 U. S. 156, 171.

[10] As the Court summarized the rule in *Cohen:*

"This decision appears to fall in that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." 337 U. S., at 546.

*MacDonald,* 435 U. S. 850, 855. An order passing on a request for class certification does not fall in that category. First, such an order is subject to revision in the District Court. Fed. Rule Civ. Proc. 23 (c)(1).[11] Second, the class determination generally involves considerations that are "enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Mercantile Nat. Bank* v. *Langdeau,* 371 U. S. 555, 558.[12] Finally, an order denying class certification is subject to effective review after final judgment at the behest of the named plaintiff or intervening class members. *United Airlines, Inc.* v. *McDonald,* 432 U. S. 385. For these reasons, as the Courts of Appeals have consistently recognized,[13] the collateral-order doctrine is not applicable to the kind of order involved in this case.

## II

Several Circuits, including the Court of Appeals in this case, have held that an order denying class certification is appealable if it is likely to sound the "death knell" of the litigation.[14] The "death knell" doctrine assumes that without the incentive of a possible group recovery the individual plaintiff may find it economically imprudent to pursue his lawsuit to a final

---

[11] The Rule provides that an order involving class status may be "altered or amended before the decision on the merits." Thus, a district court's order denying or granting class status is inherently tentative.

[12] "Evaluation of many of the questions entering into determination of class action questions is intimately involved with the merits of the claims. The typicality of the representative's claims or defenses, the adequacy of the representative, and the presence of common questions of law or fact are obvious examples. The more complex determinations required in Rule 23 (b)(3) class actions entail even greater entanglement with the merits . . . ." 15 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3911, p. 485 n. 45 (1976).

[13] See, *e. g., King* v. *Kansas City Southern Industries, Inc.,* 479 F. 2d 1259 (CA7 1973); *Williams* v. *Mumford,* 167 U. S. App. D. C. 125, 511 F. 2d 363 (1975), cert. denied, 423 U. S. 828.

[14] See n. 2, *supra.*

judgment and then seek appellate review of an adverse class determination. Without questioning this assumption, we hold that orders relating to class certification are not independently appealable under § 1291 prior to judgment.

In addressing the question whether the "death knell" doctrine supports mandatory appellate jurisdiction of orders refusing to certify class actions, the parties have devoted a portion of their argument to the desirability of the small-claim class action. Petitioner's opposition to the doctrine is based in part on criticism of the class action as a vexatious kind of litigation. Respondents, on the other hand, argue that the class action serves a vital public interest and, therefore, special rules of appellate review are necessary to ensure that district judges are subject to adequate supervision and control. Such policy arguments, though proper for legislative consideration, are irrelevant to the issue we must decide.

.There are special rules relating to class actions and, to that extent, they are a special kind of litigation. Those rules do not, however, contain any unique provisions governing appeals. The appealability of any order entered in a class action is determined by the same standards that govern appealability in other types of litigation. Thus, if the "death knell" doctrine has merit, it would apply equally to the many interlocutory orders in ordinary litigation—rulings on discovery, on venue, on summary judgment—that may have such tactical economic significance that a defeat is tantamount to a "death knell" for the entire case.

Though a refusal to certify a class is inherently interlocutory, it may induce a plaintiff to abandon his individual claim. On the other hand, the litigation will often survive an adverse class determination. What effect the economic disincentives created by an interlocutory order may have on the fate of any litigation will depend on a variety of factors.[15] Under the

---

[15] *E. g.*, the plaintiff's resources; the size of his claim and his subjective willingness to finance prosecution of the claim; the probable cost of the

"death knell" doctrine, appealability turns on the court's perception of that impact in the individual case. Thus, if the court believes that the plaintiff has adequate incentive to continue, the order is considered interlocutory; but if the court concludes that the ruling, as a practical matter, makes further litigation improbable, it is considered an appealable final decision.

The finality requirement in § 1291 evinces a legislative judgment that "[r]estricting appellate review to 'final decisions' prevents the debilitating effect on judicial administration caused by piecemeal appeal disposition of what is, in practical consequence, but a single controversy." *Eisen* v. *Carlisle & Jacquelin*, 417 U. S. 156, 170. Although a rigid insistence on technical finality would sometimes conflict with the purposes of the statute, *Cohen* v. *Beneficial Industrial Loan Corp.*, 337 U. S. 541, even adherents of the "death knell" doctrine acknowledge that a refusal to certify a class does not fall in that limited category of orders which, though nonfinal, may be appealed without undermining the policies served by the general rule. It is undisputed that allowing an appeal from such an order in the ordinary case would run "directly contrary to the policy of the final judgment rule embodied in 28 U. S. C. § 1291 and the sound reasons for it . . . ."[16] Yet several Courts of Appeals have sought to identify on a case-by-case basis those few interlocutory orders which, when viewed from the standpoint of economic prudence, may induce a plaintiff to abandon the litigation. These orders, then, become appealable as a matter of right.

In administering the "death knell" rule, the courts have used two quite different methods of identifying an appealable class ruling. Some courts have determined their jurisdiction

litigation and the possibility of joining others who will share that cost; and the prospect of prevailing on the merits and reversing an order denying class certification.

[16] *Korn* v. *Franchard Corp.*, 443 F. 2d 1301, 1305 (CA2 1971).

by simply comparing the claims of the named plaintiffs with an arbitrarily selected jurisdictional amount;[17] others have undertaken a thorough study of the possible impact of the class order on the fate of the litigation before determining their jurisdiction. Especially when consideration is given to the consequences of applying these tests to pretrial orders entered in non-class-action litigation, it becomes apparent that neither provides an acceptable basis for the exercise of appellate jurisdiction.

The formulation of an appealability rule that turns on the amount of the plaintiff's claim is plainly a legislative, not a judicial, function. While Congress could grant an appeal of right to those whose claims fall below a specific amount in controversy, it has not done so. Rather, it has made "finality" the test of appealability. Without a legislative prescription, an amount-in-controversy rule is necessarily an arbitrary measure of finality because it ignores the variables that inform a litigant's decision to proceed, or not to proceed, in the face of an adverse class ruling.[18] Moreover, if the jurisdictional

---

[17] Thus, orders denying class certification have been held nonappealable because the plaintiffs alleged damages in the $3,000–$8,000 range. *Shayne* v. *Madison Square Garden*, 491 F. 2d 397 (CA2 1974); *Korn* v. *Franchard Corp.*, *supra; Gosa* v. *Securities Inv. Co.*, 449 F. 2d 1330 (CA5 1971); *Domaco Venture Capital Fund* v. *Teltronics Services, Inc.*, 551 F. 2d 508 (CA2 1977). Smaller claims, however, have been held sufficient to support appellate jurisdiction in other cases. See, *e. g., Green* v. *Wolf Corp.*, 406 F. 2d 291 (CA2 1968), cert. denied, 395 U. S. 977.

[18] See n. 15, *supra.* Thus, it is not at all clear that the prospect of recovering $3,000 would provide more incentive to sustain complex litigation against corporate defendants than the prospect of recovering $1,000. Yet the amount-in-controversy test allows an appeal in the latter case but not in the former. Compare *Green* v. *Wolf Corp., supra,* at 295 n. 6, with *Gosa* v. *Securities Inv. Co., supra.* The arbitrariness of this approach is exacerbated by the fact that the Courts of Appeals have not settled on a specific jurisdictional amount; rather, they have simply determined on an ad hoc basis whether the plaintiff's claim is too small to warrant individual prosecution.

amount is to be measured by the aggregated claims of the named plaintiffs, appellate jurisdiction may turn on the joinder decisions of counsel rather than the finality of the order.[19]

While slightly less arbitrary, the alternative approach to the "death knell" rule would have a serious debilitating effect on the administration of justice. It requires class-action plaintiffs to build a record in the trial court that contains evidence of those factors deemed relevant to the "death knell" issue and district judges to make appropriate findings.[20] And one Court of Appeals has even required that the factual inquiry be extended to all members of the class because the policy against interlocutory appeals can be easily circumvented by joining "only those whose individual claims would not warrant the cost of separate litigation"; [21] to avoid this possibility, the named plaintiff is required to prove that no member of the purported class has a claim that warrants individual litigation.

A threshold inquiry of this kind may, it is true, identify some orders that would truly end the litigation prior to final judgment; allowing an immediate appeal from those orders may enhance the quality of justice afforded a few litigants. But this incremental benefit is outweighed by the impact of such an individualized jurisdictional inquiry on the judicial system's overall capacity to administer justice.

The potential waste of judicial resources is plain. The district court must take evidence, entertain argument, and make findings; and the court of appeals must review that record and those findings simply to determine whether a discretionary class determination is subject to appellate review. And if the record provides an inadequate basis for this determination, a

---

[19] Cf. *Milberg* v. *Western Pacific R. Co.*, 443 F. 2d 1301 (CA2 1971).

[20] See, *e. g.*, *Hooley* v. *Red Carpet Corp.*, 549 F. 2d 643 (CA9 1977); *Ott* v. *Speedwriting Pub. Co.*, 518 F. 2d 1143 (CA6 1975).

[21] *Hooley* v. *Red Carpet Corp.*, *supra*, at 645.

remand for further factual development may be required.[22] Moreover, even if the court makes a "death knell" finding and reviews the class-designation order on the merits, there is no assurance that the trial process will not again be disrupted by interlocutory review. For even if a ruling that the plaintiff does not adequately represent the class is reversed on appeal, the district court may still refuse to certify the class on the ground that, for example, common questions of law or fact do not predominate. Under the "death knell" theory, plaintiff would again be entitled to an appeal as a matter of right pursuant to § 1291. And since other kinds of interlocutory orders may also create the risk of a premature demise, the potential for multiple appeals in every complex case is apparent and serious.

Perhaps the principal vice of the "death knell" doctrine is that it authorizes *indiscriminate* interlocutory review of decisions made by the trial judge. The Interlocutory Appeals Act of 1958, 28 U. S. C. § 1292 (b),[23] was enacted to meet the recognized need for prompt review of certain nonfinal orders. However, Congress carefully confined the availability of such review. Nonfinal orders could never be appealed as a matter of right. Moreover, the discretionary power to permit an interlocutory appeal is not, in the first instance, vested in the courts of appeals.[24] A party seeking review of a nonfinal order must first obtain the consent of the trial judge. This screening procedure serves the dual purpose of ensuring that such review will be confined to appropriate cases and avoiding time-consuming jurisdictional determinations in the court

---

[22] See, e. g., *Jelfo* v. *Hickok Mfg. Co.*, 531 F. 2d 680, 681 (CA2 1976).

[23] See n. 5, *supra*.

[24] Thus, Congress rejected the notion that the courts of appeals should be free to entertain interlocutory appeals whenever, in their discretion, it appeared necessary to avoid unfairness in the particular case. H. R. Rep. No. 1667, 85th Cong., 2d Sess., 4–6 (1958); Note, Interlocutory Appeals in the Federal Courts under 28 U. S. C. § 1292 (b), 88 Harv. L. Rev. 607, 610 (1975).

of appeals.[25]   Finally, even if the district judge certifies the order under § 1292 (b), the appellant still "has the burden of persuading the court of appeals that exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *Fisons, Ltd.* v. *United States,* 458 F. 2d 1241, 1248 (CA7 1972). The appellate court may deny the appeal for any reason, including docket congestion.[26]   By permitting appeals of right from class-designation orders after jurisdictional determinations that turn on questions of fact, the "death knell" doctrine circumvents these restrictions.[27]

---

[25] H. R. Rep. No. 1667, *supra,* at 5–6:

"We also recognize that such savings may be nullified in practice by indulgent extension of the amendment to inappropriate cases or by enforced consideration in Courts of Appeals of many ill-founded applications for review.   The problem, therefore, is to provide a procedural screen through which only the desired cases may pass, and to avoid the wastage of a multitude of fruitless applications to invoke the amendment contrary to its purpose. . . .

". . . Requirement that the Trial Court certify the case as appropriate for appeal serves the double purpose of providing the Appellate Court with the best informed opinion that immediate review is of value, and at once protects appellate dockets against a flood of petitions in inappropriate cases. . . .   [A]voidance of ill-founded applications in the Courts of Appeals for piecemeal review is of particular concern.   If the consequence of change is to be crowded appellate dockets as well as any substantial number of unjustified delays in the Trial Court, the benefits to be expected from the amendment may well be outweighed by the lost motion of preparation, consideration, and rejection of unwarranted applications for its benefits."

[26] Hearings on H. R. 6238 and H. R. 7260 before Subcommittee No. 3 of the House Committee on the Judiciary, 85th Cong., 2d Sess., 21 (1958).

[27] Several Courts of Appeals have heard appeals from discretionary class determinations pursuant to § 1292 (b).   See, *e. g., Lukenas* v. *Bryce's Mountain Resort, Inc.,* 538 F. 2d 594 (CA4 1976); *Susman* v. *Lincoln American Corp.,* 561 F. 2d 86 (CA7 1977).   See also *Samuel* v. *University of Pittsburgh,* 506 F. 2d 355 (CA3 1974).   As Judge Friendly has noted: "[T]he best solution is to hold that appeals from the grant or denial of class action designation can be taken only under the procedure for inter-

Additional considerations reinforce our conclusion that the "death knell" doctrine does not support appellate jurisdiction of prejudgment orders denying class certification. First, the doctrine operates only in favor of plaintiffs even though the class issue—whether to certify, and if so, how large the class should be—will often be of critical importance to defendants as well. Certification of a large class may so increase the defendant's potential damages liability and litigation costs that he may find it economically prudent to settle and to abandon a meritorious defense. Yet the Courts of Appeals have correctly concluded that orders granting class certification are interlocutory. Whatever similarities or differences there are between plaintiffs and defendants in this context involve questions of policy for Congress.[28] Moreover, allowing appeals of right from nonfinal orders that turn on the facts of a particular case thrusts appellate courts indiscriminately into the trial process and thus defeats one vital purpose of the final-judgment rule—"that of maintaining the appropriate relationship between the respective courts. . . . This goal, in the absence of most compelling reasons to the contrary, is very much worth preserving." [29]

---

locutory appeals provided by 28 U. S. C. § 1292 (b). . . . Since the need for review of class action orders turns on the facts of the particular case, this procedure is preferable to attempts to formulate standards which are necessarily so vague as to give rise to undesirable jurisdictional litigation with concomitant expense and delay." *Parkinson* v. *April Industries, Inc.,* 520 F. 2d 650, 660 (CA2 1975) (concurring opinion).

[28] "The Congress is in a position to weigh the competing interests of the dockets of the trial and appellate courts, to consider the practicability of savings in time and expense, and to give proper weight to the effect on litigants. . . . This Court . . . is not authorized to approve or declare judicial modification. It is the responsibility of all courts to see that no unauthorized extension or reduction of jurisdiction, direct or indirect, occurs in the federal system. . . . Any such *ad hoc* decisions disorganize practice by encouraging attempts to secure or oppose appeals with a consequent waste of time and money. The choices fall in the legislative domain." *Baltimore Contractors* v. *Bodinger,* 348 U. S. 176, 181–182.

[29] *Parkinson* v. *April Industries, Inc., supra,* at 654.

Accordingly, we hold that the fact that an interlocutory order may induce a party to abandon his claim before final judgment is not a sufficient reason for considering it a "final decision" within the meaning of § 1291.[30] The judgment of the Court of Appeals is reversed with directions to dismiss the appeal.

*It is so ordered.*

---

[30] Respondents also suggest that the Court's decision in *Gillespie* v. *United States Steel Corp.*, 379 U. S. 148, supports appealability of a class-designation order as a matter of right. We disagree. In *Gillespie*, the Court upheld an exercise of appellate jurisdiction of what it considered a marginally final order that disposed of an unsettled issue of national significance because review of that issue unquestionably "implemented the same policy Congress sought to promote in § 1292 (b)," *id.*, at 154, and the arguable finality issue had not been presented to this Court until argument on the merits, thereby ensuring that none of the policies of judicial economy served by the finality requirement would be achieved were the case sent back with the important issue undecided. In this case, in contrast, respondents sought review of an inherently nonfinal order that tentatively resolved a question that turns on the facts of the individual case; and, as noted above, the indiscriminate allowance of appeals from such discretionary orders is plainly inconsistent with the policies promoted by § 1292 (b). If *Gillespie* were extended beyond the unique facts of that case, § 1291 would be stripped of all significance.