The YOUGHIOGHENY & OHIO COAL COMPANY, Petitioner,

v.

George C. BAKER; Director, Office of Workers' Compensation Programs; United States Department of Labor, and Benefits Review Board, Respondents.

No. 86–3009.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 16, 1987.

Decided April 3, 1987.

John G. Paleudis (argued), Hanlon, Duff, & Paleudis, St. Clairsville, Ohio, for petitioner.

Director of OWCP, U.S. Dept. of Labor, Edward Sieger (argued) Steven J. Mandel, Office of the Sol., U.S. Dept. of Labor, Washington, D.C., Jennifer Sargus, Wheeling, W.Va., for respondents.

Before MERRITT, WELLFORD and MILBURN, Circuit Judges.

WELLFORD, Circuit Judge.

This case concerns a jurisdictional issue of finality and a substantive issue of the proper application of federal black lung benefits statutes and regulations. Because we find the decision below was not final, we do not reach the substantive issue.

Some time before June 30, 1973, George Baker applied for benefits under Part B of the Black Lung Benefits Act (the "Act").[1] This claim was denied before the effective date of the Act's 1977 amendments. On May 18, 1976, several months after he claimed to have stopped working as a coal miner, Baker filed the instant claim for black lung benefits under Part C of the Act. A Deputy Commissioner made an initial finding of eligibility with respect to this Part C claim, which the employer, Youghiogheny & Ohio Coal Company (Y & O), contested.

In March 1978, while Baker's Part C claim was still pending with the Department of Labor and after his Part B claim had been denied, Congress amended the Black Lung Benefits Act to establish a procedure whereby claims denied before March 1, 1978 or pending on that date could be re-examined under more liberal eligibility criteria. See 30 U.S.C. § 945. Review of pending or denied Part C claims was automatic. Id. § 945(b). Review of

pending or denied Part B claims was not automatic; rather, the Secretary of Health and Human Services had to notify Part B claimants of their right to request review of these claims. Id. § 945(a)(1). A claimant could then elect review by either the Department of Labor or Department of Health and Human Services. Id.

In August 1978, the Department of Health and Human Services issued regulations setting out procedures for Part B claimants to elect review of denied or pending claims. These regulations provide that a request for review of a Part B claim "must be received by the Social Security Administration within 6 months from the date on which the notice [from the Secretary of Health and Human Services] is mailed." 20 C.F.R. 410.704(d). Failure to respond within this period is considered a waiver of the right to review, unless "good cause," as defined in the regulation, can be established for not timely responding. Id. Good cause does not exist "when there is evidence of record that the individual was informed that he or she should respond timely and the individual failed to do so because of negligence or intent not to respond." Id. § 410.704(d)(3).

In 1978, the Secretary of Health and Human Services notified Baker of his right to seek review of the denied Part B claim. No evidence has been presented to establish that Baker requested review of his denied Part B claim or that good cause existed for his failure to request review.

In 1981 Congress amended the Act to relieve coal operators of liability for certain claims that were denied before March 1978 and reopened and approved under the Act's 1977 amendments. The 1981 amendment accomplished this through provisions that transfer liability in certain cases to the Black Lung Disability Trust Fund. In February 1982 Y & O filed a motion to transfer liability for Baker's claim to the Trust Fund.

Considering Y & O's motion, the Administrative Law Judge (ALJ) recognized that

---

1. A claim is deemed a Part B claim or Part C claim depending on when it is filed. Claims filed before June 30, 1973 are Part B claims. 30 U.S.C. § 924(b). Claims filed after December 31, 1973 are Part C claims. 30 U.S.C. § 931(a).

Baker's Part C claim is not subject to the 1981 transfer provision because this claim has not been "denied" within the meaning of 30 U.S.C. 932(j)(3). *See* 30 U.S.C. 902(i)(2) (definition of "denied" claims). Nevertheless, the ALJ transferred liability for the claim on the theory that Baker "could have" elected review of his denied Part B claim, and that if this claim had been approved, liability for it would have transferred to the Trust Fund. According to the ALJ, review of the Part B claim would have put Baker in the same "position procedurally" as review of the Part C claim, in that both claims would be reviewed under the 1977 amendments. The ALJ therefore treated Baker's two claims, neither of which separately met the transfer of liability criteria, as one "dual" claim that did meet those criteria.

The Benefits Review Board (the "Board"), relying on its decision and order in *Chadwick v. Island Creek Coal Co.*, 7 Black Lung Rep. 1–883 (1985), *aff'd en banc*, 8 Black Lung Rep. 1–447 (1986), vacated the ALJ's decision and order. The Board reasoned that "claims filed pursuant to Part B and Part C of the Act are separate and distinct assertions of entitlement" that merge, if at all, only by operation of law under the Department of Labor's and Department of Health and Human Services' duplicate claims regulations. The ALJ erred by combining the procedural histories of Baker's Part B and Part C claims, the Board held, because Baker "failed to request review of his denied Part B claim, thus waiving his right to further consideration of that claim" under the Department of Health and Human Services' regulations. Because the remaining Part C claim was not "denied" prior to March 1, 1977, the Board held that the case "does not contain the procedural history necessary to

support transfer under the 1981 amendments."

The Board further rejected Y & O's argument that the Director had failed to establish that Baker received but did not return an election card in connection with his Part B claim. The Director's September 3, 1982 response to the ALJ's order to submit information on the transfer issue "satisfied his duty of presenting all relevant facts regarding transferability," the Board concluded, and Y & O "has not presented evidence establishing the existence of an election by claimant." The Board reversed, therefore, the ALJ's decision transferring liability from Y & O to the Trust Fund and remanded the case to the ALJ to determine the merits of Baker's Part C claim to benefits. Y & O now appeals the Board's determination that liability should not be transferred to the Trust Fund.

The threshold issue in this case is whether the Board's decision is a final, appealable order.[2] We have defined a final order as: "one which disposes of the whole subject, gives all the relief that was contemplated, provides with reasonable completeness for giving effect to the judgment and leaves nothing to be done in the cause save to superintend, ministerially, the execution of the decree." *Wagner v. Burlington Industries, Inc.*, 423 F.2d 1319, 1321 (6th Cir.1970). This definition is in keeping with the Supreme Court's general test for finality: whether the decision "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *See Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 373, 101 S.Ct. 669, 673, 66 L.Ed.2d 571 (1981).

▮ The Board's order in this case is not "final" according to these definitions. The Board decided the transfer issue, which

**2.** Section 21(c) of the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 921(c), applies to actions concerning entitlement to benefits under the Black Lung Benefits Act. 30 U.S.C. § 932(a). Section 921(c) provides: "Any person adversely affected or aggrieved by a *final* order of the Board may obtain a review of that order in the United States court of appeals for the circuit in which the injury occurred...."

33 U.S.C. § 921(c) (emphasis added). Courts uniformly agree that the finality requirement in section 921(c) follows the same contours as the finality requirement in 28 U.S.C. § 1291. *See, e.g., Newport Shipping & Repair, Inc. v. Roundtree*, 723 F.2d 399, 400 (5th Cir.) (en banc), *cert. denied*, 469 U.S. 818, 105 S.Ct. 88, 83 L.Ed.2d 35 (1984).

resolved only the question of who will pay if Baker is entitled to benefits. The entitlement issue, which is central to the case, remains to be determined. The relief sought, benefits under the Act, cannot be granted until the ALJ determines whether Baker is entitled to benefits. Y & O has not conceded entitlement; that issue is still unresolved. The Board's order, therefore, has not ended the litigation on the merits, and a decision by this court on the transfer issue would not end the litigation on the merits. The finality rule seeks to avoid "piecemeal appellate review of trial court decisions which do not terminate the litigation." *Richardson-Merrell, Inc. v. Koller,* 472 U.S. 424, 430, 105 S.Ct. 2757, 2761, 86 L.Ed.2d 340 (1985). This rule would indicate that the order in controversy is not appealable and is not a final order.

■ Y & O asserts that this case falls within the collateral order exception to the finality rule. The collateral order rule is a "narrow exception" available only when an order satisfies three conditions: the order must (1) "conclusively determine the disputed question," (2) "resolve an important issue completely separate from the merits of the action," and (3) "be effectively unreviewable on appeal from a final judgment." *Richardson-Merrell,* 472 U.S. at 431, 105 S.Ct. at 2761 (citing *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351 (1978)).

The first two conditions are indisputably present; the question here is whether the third condition is met. Y & O argues that it has an "entitlement" not to be sued, which constitutes a collateral order under the rationale of *Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), because Y & O is entitled to have any potential liability transferred to the Trust Fund. The Board's decision on transfer forces Y & O to continue to litigate the merits of this case, which decision, according to Y & O, eviscerates Y & O's entitlement not to be sued. Y & O argues that review of the transfer issue on appeal of the whole judgment could not change the fact that Y & O had to litigate the case on the merits and the issue of Y & O's

entitlement not to be sued is thus effectively unreviewable on appeal. We find this argument to be without merit. An entitlement not to be sued under *Mitchell v. Forsyth* is not available to private parties like Y & O. *See Chicago & Northwestern Transp. Co. v. Ulery,* 787 F.2d 1239, 1240–41 (8th Cir.1986). We have held, moreover, that *Mitchell v. Forsyth* applies only when a party is immune from *suit,* not when the alleged immunity is only from *liability. See Marrical v. The Detroit News, Inc.,* 805 F.2d 169, 172–73 (6th Cir.1986). The issue here is *transfer of liability,* not entitlement not to be sued, and the transfer issue is clearly reviewable on appeal from a final judgment determining the merits of the case. This case, therefore, fails to meet the third criterion and does not fall within the collateral order rule.

■ Y & O also asserts that we should find an exception to ordinary finality principles in this case because of a regulation concerning dismissal of operators. 20 C.F.R. § 725.497(c) provides that "[i]f it is determined that a coal mine operator ... may no longer be found liable for payment of benefits ... such operator ... shall be *promptly* dismissed as a party to the claim." *Id.* (emphasis added). The regulation continues: "The dismissal of an operator ... *shall be concluded at the earliest possible time* and in no event shall an operator ... participate as a necessary party in any claim for which only the Trust Fund may be liable." *Id.* (emphasis added). This regulation, however, only addresses the process of dismissing operators once the decision to transfer has been made. It does not address the issue of finality and cannot change the jurisdictional requirement that appellate courts consider only final orders.

Accordingly, we DISMISS this case for lack of appellate jurisdiction.