**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Ernest Glenn AMBORT, William J. Lewis, and John W. Benson,
Defendants–Appellants.**

Nos. 01–4077, 01–4078, 01–4079.

United States Court of Appeals,
Tenth Circuit.

July 24, 2002.

264

Before MURPHY and O'BRIEN, Circuit Judges and Anderson, Senior Circuit Judge.

## ORDER AND JUDGMENT *

STEPHEN H. ANDERSON, Senior Circuit Judge.

This matter is before us on interlocutory appeal for the second time in an attempt by Defendants Appellants ("Defendants") to avoid trial on various charges alleging violation of federal tax laws.[1] Relying principally on *United States v. P.H.E., Inc.*, 965 F.2d 848 (10th Cir.1992), Defendants assert that they have a First Amendment "right not to be tried." Specifically, they contend that the government is waging a vindictive prosecution against them, motivated by a desire to chill their First Amendment rights.

We rejected the identical argument the first time this case was before us, and

dismissed the appeal for lack of jurisdiction. *United States v. Ambort*, 193 F.3d 1169 (10th Cir.1999) ("*Ambort I*"). We concluded that nothing in the record placed the case in the category of *P.H.E.*,[2] and that the "collateral order doctrine" therefore did not apply.[3] In reasserting their arguments now, Defendants contend that a newly discovered piece of information, to wit: a document entitled "Operation Phoenix Prospectus," App. to Jurisdictional Briefs of all Appellants at 44–63 ("Prospectus"), provides the evidence of pre-textual prosecution lacking in *Ambort I*.

◼ The relevant background information for this case is set forth in *Ambort I*, 193 F.3d at 1170–71, and need not be repeated here. Our central task is to determine whether the Prospectus, together with inferences the Defendants contend should be drawn therefrom, places this case in a posture sufficiently different from *Ambort I* to support a conclusion that Defendants have proved the existence of a "right not to be tried" under *P.H.E.* Having carefully reviewed the document in question, Defendants' arguments relating

* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

1. We originally combined Defendants' individual appeals for purposes of oral argument. Because all three appeals raise essentially identical issues and suffer the same jurisdictional defects, we now consolidate them for disposition.

2. In *P.H.E.* we held that a defendant has a First Amendment "right not to be tried" in the "unusual" and "unique" case where there is "substantial evidence" that the prosecution is pre-textual and based on "an extensive government campaign ... designed to use the burden of repeated criminal prosecutions to chill the exercise of First Amendment rights."

965 F.2d at 855. Concluding that the "right not to be tried" would be "lost, probably irreparably, if review had to await final judgment," we allowed the defendant's interlocutory appeal. *Id.* at 855 (quotation omitted).

3. The "collateral order doctrine" is a judicially created exception to 28 U.S.C. § 1291, which grants appellate courts jurisdiction over "final decisions of the district courts of the United States...." Under this doctrine, courts of appeal may review only those interlocutory orders which " 'conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and [are] effectively unreviewable on appeal from a final judgment.' " *Ambort I*, 193 F.3d at 1171 (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978)).

thereto, and the posture of the case at the present time, we adhere to the conclusions reached in *Ambort I*, and continue to hold that this is not a proper case for interlocutory appeal. The differences between this case and *P.H.E.* remain obvious and significant, and Defendants have wholly failed to demonstrate the existence of a "right not to be tried."[4] This case is now in a posture to proceed to trial where Defendants will be free to make their arguments on the merits, subject, of course, to the rules governing trials, including the Rules of Evidence. In the eventuality of a conviction, the Defendants will likewise be entitled to pursue their claims on appeal. Accordingly, Defendants' interlocutory appeal is DISMISSED.

■ Defendants alternatively petition for a writ of mandamus ordering the district court to allow further discovery relevant to Operation Phoenix. Mandamus is an extraordinary remedy, *see Allied Chem. Corp. v. Daiflon, Inc.,* 449 U.S. 33, 34, 101 S.Ct. 188, 66 L.Ed.2d 193 (1980); *Weston v. Mann (In re Weston),* 18 F.3d 860, 864 (10th Cir.1994), one that we will not ordinarily use prior to trial to scrutinize or interfere with a district court's discretionary discovery decisions. *See Paramount Film Dist. Corp. v. Civic Ctr. Theatre, Inc.,* 333 F.2d 358, 361 (10th Cir.1694) ("A writ of mandamus to a trial court in matters relating to discovery should only issue under exceptional circumstances which amount to a clear abuse of discretion, an abdication of the judicial function, or the usurpation of judicial power.").[5] On the record before us, we hold that the district court did not clearly abuse its discretion, and that Defendants are not entitled to the extraordinary relief sought. Accordingly, Defendants' petition for a writ of mandamus is DENIED.

---

4. The Prospectus reveals that Operation Phoenix is a program created by the Internal Review Service ("IRS") to track and prevent the clearly criminal activities of a nationwide, California-based tax protestor organization known as The Pilot Connection Society ("TPCS"). The IRS targeted TPCS out of a belief that it was acting criminally, with the "avowed goal" of destroying the IRS. *See* Prospectus at 1. Believing that TPCS perpetuated "self-serving theories, half truths, [and] misrepresentation[s]," *id.* at 2, to actively encourage otherwise law abiding citizens to violate the federal tax laws, the IRS developed Operation Phoenix as a coordinated effort to prevent its ongoing criminal efforts. The Prospectus is relevant in this case only because it tangentially identifies Associates de Libertas (the organization in which Defendants were involved) as a splinter group of TPCS subject to investigation.

Contrary to Defendants' assertions, there is no evidence that Operation Phoenix was intended to prevent the lawful expression of anti-IRS viewpoints simply for the sake of suppression. Indeed, any potential impact on First Amendment rights was incidental, at best, to Operation Phoenix's otherwise lawful purpose of preventing crime. We are also convinced that Operation Phoenix was not the impetus for the specific investigation into Defendants' alleged criminal activity, and that it did not actually influence or direct that investigation. *See* June 5, 2000, Tr. of Proceedings on Motions to Suppress at 15–16, R. Vol. XXIII (Testimony of IRS Special Agent Jerry R. Wright) (indicating that the investigation of Defendants spawned entirely from the tip of a local informant); June 15, 2000, Tr. of Proceedings on Motions to Suppress at 194, R. Vol. XXIV (Testimony of Agent Wright) ("Did Operation Phoenix direct me to do the things that I did, no.").

5. *See also United States v. Carrigan,* 804 F.2d 599, 604 (10th Cir.1986) (concluding that when a district court acts within its discretion in granting discovery motions "the threshold showing necessary to secure a writ of mandamus is higher than mere error, even error that might lead to reversal on a direct appeal," and that "[t]he trial court's action must be so clearly without proper basis as to amount to a usurpation of [judicial] power").