HUGHES, Circuit Judge,
dissenting.
The America Invents Act (AIA), Pub.L. No. 112-29, 125 Stat. 284 (2011), created a new transitional procedure to challenge the validity of covered business method (CBM) patents before the United States Patent and Trademark Office. The AIA also permits parties to seek stays of related district court litigation while CBM challenges are pending. See id. § 18. And to ensure uniformity in stay decisions, the AIA gave this court the authority to immediately review the district court’s grant or denial of a stay. The majority improperly limits our review authority to only stay decisions predicated on an already instituted CBM proceeding. Because the majority’s conclusion relies on an overly narrow *1380 textual analysis and is at odds with the overall purpose of the AIA and the specific purpose of the CBM procedure, I respectfully dissent.
The AIA was “designed to establish a more efficient and streamlined patent system that will improve patent quality and limit unnecessary and counterproductive litigation costs.” H.R.Rep. No. 112-98, pt. 1, at 40 (2011), 2011 U.S.C.C.A.N. 67, 69. To these ends, Congress considered and enacted § 18, “one of the [AIA’s] most important reforms,” to “crackdown on low-quality business[-]method patents.” 157 Cong. Rec. 9952 (2011) (remarks of Rep. Grimm). According to Congress, litigation over CBM patents placed a “substantial burden” on the courts and the economy. 157 Cong. Rec. 3416 (2011) (remarks of Sen. Schumer). Because Congress sought to curb this litigation and the associated costs, an explicit goal of the new program under § 18 was to provide a cheaper, faster administrative alternative for reviewing business method patents. Id. Indeed, Congress repeatedly indicated that the program should be used “instead of, rather than in addition to, civil litigation.” Id.; see also 157 Cong. Rec. 2710 (2011) (remarks of Sen. Hatch); 157 Cong. Rec. 3432-33 (2011) (remarks of Sen. Kyi); 157 Cong. Rec. S5436-37 (daily ed. Sept. 8, 2011) (remarks of Sen. Schumer).
To preserve the benefits of this alternative, § 18 authorizes a stay of related district court proceedings, and Congress intended stays to be granted in all but the rarest of circumstances. 157 Cong. Rec. 3417 (2011) (remarks of Sen. Schumer). It believed that “[t]oo many district courts [were] content to allow litigation to grind on while a reexamination [was] being conducted, forcing the parties to fight in two fora at the same time.” Id. at 3416. That state of affairs was “unacceptable, and ... contrary to the fundamental purpose of [§ 18] to provide a cost efficient alternative to litigation.” Id. at 2417. To ensure consistent and rigorous application of the stay provisions, § 18 allows for parties, “as of right, to have the Federal Circuit closely review” a district court’s decision on a request for a stay of a civil action relating to a transitional proceeding. Id. Section 18 provides an “automatic right to an interlocutory appeal,” which the district court need not certify under 28 U.S.C. § 1292(b). Id. Congress made clear that “the Federal Circuit may not decline to hear an interlocutory appeal.” Id.
Section 18(b)(1) of the AIA limits the stay provisions in that section to infringement actions “relating to a transitional proceeding.” The majority reads the phrase, “relating to a transitional proceeding,” as confining the district court’s authority to stay a case under § 18 to instances where the Patent Office has already instituted a CBM review, and thus confines our review authority in § 18(b)(2) to the same circumstances. The majority provides a reasonable textual analysis for its conclusion. But given the overall purpose and legislative history of the AIA and § 18, I do not believe that Congress had any intent to so limit our jurisdiction by its choice of that specific statutory language. Rather, I read the stay provision in § 18(b)(1) as more broadly authorizing district courts to stay a case based on a CBM review at any stage in the CBM process, and consequently our review extends to stay decisions issued at any stage in the CBM process.
The majority’s purely textual analysis cannot be squared with the overall legislative purpose of the AIA and § 18. The meaning of statutory language “may vary to meet the purposes of the law, to be arrived at by a consideration of the language in which those purposes are expressed, and of the circumstances under *1381 which the language was employed.” Yates v. United States, — U.S.-, 135 S.Ct. 1074, 1082, 191 L.Ed.2d 64 (2015) (quoting Atl. Cleaners & Dyers v. United States, 286 U.S. 427, 433, 52 S.Ct. 607, 76 L.Ed. 1204 (1932)). Congress repeatedly stated its paramount goal of having § 18 serve as a cheaper, faster alternative to be used instead of — rather than in addition to— litigation in district court. If we decline to review stay decisions before CBM review is instituted, parties inevitably will be forced to simultaneously litigate in district court and at the Patent Office. This is inconsistent with the purpose of § 18. Further, if the petition is ultimately granted, the expenses incurred at the district court from the time the petition was filed to the time a subsequent stay request is granted become the kind of “unnecessary and counterproductive litigation costs” Congress sought to avoid. H.R.Rep. No. 112-98, pt. 1, at 40 (2011), 2011 U.S.C.C.A.N. 67, 69. Given the clearly expressed purpose of § 18 proceedings, Congress could not have intended to create an exception for interlocutory orders, but then limit our jurisdiction by way of the majority’s distinction between instituted proceedings and those where a petition has been filed.
The majority’s decision is also inconsistent with Congress’s desire for uniformity in stay decisions. As the majority recognizes, and as we have previously held, district courts may grant stays for CBM proceedings at any time and are not precluded from granting a stay based on the filing of a petition. See VirtualAgility Inc. v. Salesforce.com, Inc., 759 F.3d 1307, 1316 (Fed.Cir.2014). Indeed, we have expressly noted the district court’s wide latitude in the timing of these stay decisions. Id. (“[A] motion to stay could be granted even before the PTAB rules on a post-grant review petition.... ”). If that is the case, then we are left with a situation where district courts could make stay decisions prior to institution that are unreviewable. And therefore we could not ensure the uniformity that Congress so clearly intended for such decisions.
Although it is true, as the majority notes, that the Supreme Court has stated that exceptions to the final judgment rule within 28 U.S.C. § 1291 are to be construed narrowly, I do not find that principle particularly relevant here. Congress expressly granted a right to interlocutory appeal in § 18(b)(2) that on its face is not limited. And to read § 18(b)(1) in such a way as to infer a limitation is not consistent with Congressional intent. Congress explicitly intended to allow litigants to circumvent the interlocutory appeal provisions of 28 U.S.C. § 1292(b) by invoking § 18. See 157 Cong. Rec. 3417 (2011) (remarks of Sen. Schumer) (“[T]he district court does not need to certify the appeal in writing, as it would ordinarily need to do under 28 U.S.C. § 1292(b). Also, unlike the discretion typically afforded an appellate court under 28 U.S.C. § 1292(b), under this amendment the Federal Circuit may not decline to hear an interlocutory appeal.”). When read in the context of the surrounding legislative history, this strongly .suggests that Congress sought to have district court litigation “disrupted by interlocutory review” and subject to the “premature demise” the Supreme Court has been concerned with when considering interlocutory appeals. Coopers & Lybrand v. Livesay, 437 U.S. 463, 474, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978).
The result of the majority’s interpretation is a curious parsing of the statute. It creates a needlessly complicated regime that divides CBM stay decisions and our review authority into two categories: § 18(b)(1) stays, which can only occur after a CBM proceeding has been instituted; and stays based on the district court’s *1382 inherent stay power for any stay requested between the filing of a petition for CBM review and the formal institution of a CBM proceeding. And apparently this is true even if the district court’s decision is expressly based on the filing of a petition and expressly weighs the § 18(b)(1) factors.
Without something more explicit in the statute, I cannot believe Congress intended this result. The majority would seemingly require Congress to explicitly reference the petition stage of the CBM proceeding for it to be covered under § 18(b)(1) and thus for us to have jurisdiction under § 18(b)(2). I do not believe that is correct. Rather, the more natural reading of § 18(b) is a specific authorization of district courts to consider stay requests relating to CBM challenges based on the stay factors identified in § 18, regardless of whether the Patent Office has actually instituted a CBM proceeding. Indeed, the stay factors in § 18(b)(1) are drawn from a case in which a district court was considering a stay at the petition stage for a similar proceeding. See 157 Cong. Rec. 3416 (2011) (remarks of Sen. Schumer) (“this amendment instructs courts to apply the four-factor test first announced in [Broadcast Innovation, L.L.C. v. Charter Communications Inc., No. 03-cv-2223, 2006 WL 1897165 (D.Col. July 11, 2006) ] when evaluating stay motions”). And that is exactly how most district courts have been applying § 18, which, perhaps not coincidentally, also furthers the uniformity of stay decisions in cases where CBM patents may be at issue. See, e.g., buySAFE, Inc. v. Google, Inc., No. 3:13CV781-HEH, 2014 WL 2714137, at *3 (E.D.Va. June 16, 2014); Market-Alerts Pty. Ltd. v. Bloomberg Fin. L.P., 922 F.Supp.2d 486, 490 n. 5 (D.Del.2013). The majority’s more complicated, two-standard regime conflicts with the AIA’s overall purpose of establishing a more efficient and streamlined patent system.
Further, the majority’s distinction between pre- and post-CBM review institution decisions may create anomalous situations. If our jurisdiction is determined by whether the Patent Office has instituted CBM review, it is not clear how or even whether we should handle “hybrid” cases where a stay motion is predicated on one patent for which CBM review has been instituted and another patent for which a petition for CBM review is pending. Presumably we would possess jurisdiction because the stay decision is predicated on at least one instituted CBM proceeding, but that raises even further questions about how our review should proceed. If the district court’s decision is based on not only the instituted proceeding, but also a pending petition or petitions, can we consider those pending petitions in reviewing the propriety of the stay decision? If the majority is correct that the district court’s authority to stay cases under § 18(b)(1) only extends to instituted proceedings and our jurisdiction is coextensive to that, then what would be the basis for our review of the decision at least so far as it extends to pre-institution proceedings? And the majority’s decision makes it less clear how or whether a party, the district court, or this court is to handle reconsideration of a stay which was granted before CBM review is instituted, after the Patent Office has instituted CBM review. To be sure, the majority’s decision will not further the establishment of a “more efficient and streamlined patent system.”
Finally, it is inconsistent to hold that a party requesting a stay has the benefit of our review only after CBM review is instituted, while a party requesting a stay before that time does not, even though significant factors — e.g., expenditure of the court’s and the parties’ resources — favor a stay more so in the latter situation. Given *1383 these practical considerations and the difficulty in applying the majority’s rule, and without any convincing congressional intent to so limit our review authority, I conclude that we have jurisdiction over any stay decision related to a CBM proceeding, regardless of whether the stay request was filed at the petition stage or after institution.
I would .find that we possess jurisdiction to review the district court’s denial of the stay. And on the merits, I would affirm the district court’s decision.
Accordingly, I respectfully dissent.