ORDER
June 3, 1996
The court having received two petitions for rehearing en bane, and the petitions having been circulated not only to the original panel members but also to all other active judges of this court, and no judge of this court having requested a vote on the suggestion for rehearing en banc, the petitions for rehear *485 ing have been referred to the original hearing panel.
This panel has further reviewed the petitions for rehearing and concludes that the issues raised in the petitions were fully considered upon the original submission and decision of the case. Accordingly, the petitions are denied.
This panel is, however, issuing an amended opinion in which we adhere to the April 9, 1996 decision in this case, but seek to clarify the scope of the ruling and the impact it is intended to have. The opinion is therefore amended and reissued as follows. Mandate to issue immediately.
AMENDED OPINION
BOYCE F. MARTIN, Jr., Circuit Judge.
This is an appeal to determine the subject matter jurisdiction of federal district courts, sitting as bankruptcy courts, over proceedings “related to” a case filed under Chapter 11 of the Bankruptcy Code, and the ability of federal district courts to transfer such proceedings to the district court in which the bankruptcy case is pending. The principal issue presented is whether the district court erred, as a matter of law, in its determination that claims for compensatory and punitive damages asserted in tens of thousands of actions against numerous nondebtor manufacturers and suppliers of silicone gel breast implants could have no conceivable effect upon, and therefore were not related to, the bankruptcy estate of The Dow Corning Corporation. The district court held that it did not have “related to” jurisdiction over those claims pursuant to 28 U.S.C. § 1334(b) and concluded that they could not be transferred to it pursuant to 28 U.S.C. § 157(b)(5). For the following reasons, we REVERSE and REMAND for further proceedings consistent with this opinion.[1]
I.
Until it ceased their manufacture in 1992, Dow Corning was the predominant producer of silicone gel breast implants, accounting for nearly 50% of the entire market. In addition, Dow Corning supplied silicone raw materials to other manufacturers of silicone gel breast implants. In recent years, tens of thousands of implant recipients have sued Dow Corning, claiming to have been injured by autoimmune reactions to the silicone in their implants. Dow Chemical Company, Corning Incorporated, Minnesota Mining and Manufacturing Company, Baxter Healthcare Corporation and Baxter International Incorporated,[2] and Bristol-Myers Squibb Company and Medical Engineering Corporation[3] are other manufacturers and suppliers of silicone gel-filled implants, and are codefendants with Dow Corning in a large number of personal injury actions.
On June 25, 1992, prior to Dow Coming’s filing of its Chapter 11 petition, the Federal Judicial Panel on Multidistrict Litigation ordered the consolidation of all breast implant actions pending in federal courts for coordinated pretrial proceedings, and transferred those actions to Chief Judge Pointer of the Northern District of Alabama. On September 1, 1994, Chief Judge Pointer certified a class for settlement purposes only, and approved a complex agreement between members of the class and certain defendants that contemplated the creation of a $4.25 billion fund to cover, among other things, the costs of treatment and other expenses incurred by breast implant recipients. Each class member was given the opportunity to opt out of the class and to pursue her individual claims separately. Several thousand plaintiffs opted out of the settlement class, while approximately 440,000 elected to register for inelu *486 sion in the Global Settlement.[4]
Due to the litigation burden imposed by what is one of the world’s largest mass tort litigations, and the threatened consequences of the thousands of product liability claims arising from its manufacture and sale of silicone breast implants and silicone gel, Dow Coming filed a petition for reorganization under Chapter 11 of the Bankruptcy Code on May 15, 1995, in the United States District Court for the Eastern District of Michigan. The district court had jurisdiction over that proceeding pursuant to 28 U.S.C. § 1334(a). As a result of Dow Coming’s Chapter 11 filing, all breast implant claims against it were automatically stayed pursuant to 11 U.S.C. § 362(a). Claims against Dow Coming’s two shareholders, Dow Chemical and Coming Incorporated, and the other non-debtor defendants were not stayed. Dow Chemical, Corning Incorporated, Minnesota Mining, Baxter and Bristol-Myers Squibb subsequently removed many opt-out claims in which those companies were named defendants with Dow Corning from state to federal court pursuant to 28 U.S.C. § 1452(a).
On June 12, 1995, Dow Corning filed a motion pursuant to 28 U.S.C. § 157(b)(5)[5] to transfer to the Eastern District of Michigan opt-out breast implant claims pending against it and its shareholders, Dow Chemical and Corning Incorporated.[6] Dow Coming’s motion covered claims that had been removed to federal court and were pending in the multidistriet forum, as well as claims pending in state courts which were in the process of being removed to federal courts pursuant to 28 U.S.C. § 1452(a). Dow Corning envisioned its transfer motion as the first step in ensuring a feasible plan of reorganization, and indicated that it would seek to have the transferred actions consolidated for a threshold jury trial on the issue of whether silicone gel breast implants cause the diseases claimed. Dow Chemical and Corning Incorporated joined in Dow Coming’s motion.
On June 14, 1995, Minnesota Mining, Baxter, and Bristol-Myers Squibb also moved, pursuant to Section 157(b)(5), to transfer to the Eastern District of Michigan the opt-out cases in which those manufacturers were named as defendants with Dow Coming.[7] In *487 their Section 157(b)(5) motions, Minnesota Mining, Baxter, and Bristol-Myers Squibb also asked the district court to order that the claims at issue be transferred to the district court in which the bankruptcy case is pending so that the court could conduct a consolidated trial on the issue of causation.
On September 12, 1995, the district court issued two opinions and companion orders regarding the Section 157(b)(5) transfer motions. With respect to opt-out breast implant cases pending against Dow Corning, the district court asserted jurisdiction under Section 1384(b) and permitted transfer pursuant to Section 157(b)(5). The district court, however, denied the remainder of the transfer motions on the ground that, as a matter of law, it lacked subject matter jurisdiction over the claims sought to be transferred because they were not “related to” Dow Coming’s bankruptcy proceeding pursuant to 28 U.S.C. § 1334(b). In denying the transfer motions, the district court also directed that individual federal courts nationwide dismiss or sever Dow Coming and/or remand the combined opt-out actions to state court, and enjoined the nondebtor eodefendants from removing any other cases from state to federal court pursuant to 28 U.S.C. § 1452 if the only basis for such removal was 28 U.S.C. § 1334(b) or 28 U.S.C. § 1367(a). In a September 14, 1995 order, the district court extended its rulings to include opt-in breast implant claims.
Dow Coming, Dow Chemical, Coming Incorporated, Minnesota Mining, Baxter, and Bristol-Myers Squibb subsequently filed appeals seeking review of the district court’s partial denial of their motions to transfer. Those appeals were consolidated on October 10, 1995, and we are now faced with a complex set of questions pertaining to the scope of a district court’s jurisdiction when it sits in bankruptcy, and its power to fix venue for the trial of wrongful death and personal injury tort claims that are “related to” a bankruptcy proceeding. In addressing these issues, we begin, as we do in any case involving a question of statutory construction, with the express language of the statute at issue and an examination of Congressional intent. In addition, we recognize that our decision will significantly impact the future course of this massive litigation. Realizing that we cannot satisfy all competing interests perfectly, our primary goal is to establish a mechanism for resolving the claims at issue in the most fair and equitable manner possible. In seeking to achieve that goal, we are called upon to balance four different, and frequently competing, interests: those of the individuals who have brought and will bring breast implant claims; Dow Coming’s interests with regard to its attempt to formulate a successful reorganization plan; Dow Chemical and Corning Incorporated’s interests as shareholders of Dow Corning; and the judicial system’s interest in allocating its limited resources effectively and efficiently.
II.
As a threshold matter, we must determine whether the district court’s partial denial of the motions to transfer is immediately appealable. These issues are certainly fluid. Our general jurisdiction to review a decision or order of a district court sitting in bankruptcy is governed by 28 U.S.C. § 1291. A.H. Robins Co. v. Piccinin, 788 F.2d 994, 1009 (4th Cir.1986), cert. denied, 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986) (“A.H. Robins Co. I”); In re Salem Mortgage Co., 783 F.2d 626, 629 n. 15 (6th Cir. 1986) (stating that Congress apparently assumed Section 1291 would be available for bankruptcy appeals because that provision *488 was at one time proposed to be the exclusive source of such jurisdiction). Title 28 U.S.C. § 1291 permits appeals only from “final decisions of the district courts.” This finality requirement is considered “in a more pragmatic and less technical way in bankruptcy cases than in other situations.” In re Cottrell, 876 F.2d 540, 541-42 (6th Cir.1989) (citing In re Amatex Corp., 755 F.2d 1034, 1039 (3d Cir.1985)). In bankruptcy cases, “a ‘functional’ and ‘practical’ application [of Section 1291] is to be the rule.” A.H. Robins Co. I, 788 F.2d at 1009. The reason for a more relaxed rule of appealability in bankruptcy cases is that:
Bankruptcy cases frequently involve protracted proceedings with many parties participating. To avoid the waste of time and resources that might result from reviewing discrete portions of the action only after a plan of reorganization is approved, courts have permitted appellate review of orders that in other contexts might be considered interlocutory.
Id. at 1009 (citations omitted). Therefore, where an order in a bankruptcy case “finally disposefs] of discrete disputes within the larger case,” it may be appealed immediately. In re Saco Local Dev. Corp., 711 F.2d 441, 444 (1st Cir.1983). We find that the district court’s order entered in bankruptcy satisfies the finality requirement of Section 1291 for purposes of appealability.
We also believe appealability of the district court’s order is sustainable under the collateral order doctrine of Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). Cohen holds that it is not always necessary that a judgment terminate an action before an appeal may be brought, and permits appellate review of decisions which “finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated.” Id. at 546, 69 S.Ct. at 1225-26. A collateral order is reviewable under Cohen when it: (1) conclusively determines the disputed question; (2) resolves an important question completely separate from the merits of the action; and (3) is effectively unreviewable on appeal from final judgment. Pacor, Inc. v. Higgins, 743 F.2d 984, 988 (3d Cir.1984) (citing Coopers & Lybrand v. Live-say, 437 U.S. 463, 468, 98 S.Ct. 2454, 2457-58, 57 L.Ed.2d 351 (1978)). These three factors are equally fluid and are applied flexibly in determining whether an order involving a bankruptcy proceeding is reviewable. In re Pan Am Corp., 16 F.3d 513, 515 (2d Cir.1994) (“In re Pan Am Corp. I”). Here we believe these conditions have been satisfied on all grounds. The district court’s order conclusively determines that claims pending against the nondebtor defendants are not “related to” Dow Coming’s bankruptcy proceeding for purposes of Section 1334(b). In addition, resolution of the “related to” jurisdictional question does not involve consideration of the merits of the pending tort claims. Finally, due to the unique circumstances of this case and the hardship that would inevitably result if we were to refrain from addressing the issues presented by this appeal at this time, the issues presented will be effectively unreviewable after a final judgment is rendered.
Because appellate jurisdiction exists, we turn to the questions on appeal.
III.
The first issue to be resolved is whether the district court has subject matter jurisdiction over breast implant claims pending not only against the debtor, Dow Corning, but also over certain claims pending against the nondebtor defendants. The non-debtor defendants argue that such jurisdiction exists pursuant to 28 U.S.C. § 1334(b) or, alternatively, 28 U.S.C. § 1367(a). We review the district court’s jurisdictional ruling de novo. In re Wolverine Radio Co., 930 F.2d 1132, 1138 (6th Cir.1991) (citation omitted).
Section 1334 grants jurisdiction to district courts in bankruptcy cases and proceedings as follows:
(a) Except as provided in subsection (b) of this section, the district court shall have original and exclusive jurisdiction of all eases under title 11.
*489 (b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.
28 U.S.C. § 1334 (emphasis added).
In addressing the extent of a district court’s bankruptcy jurisdiction under Section 1334(b) over civil proceedings “related to” eases under title 11, we start with the premise that the “emphatic terms in which the jurisdictional grant is described in the legislative history, and the extraordinarily broad wording of the grant itself, leave us with no doubt that Congress intended to grant to the district courts broad jurisdiction in bankruptcy cases.” In re Salem, 783 F.2d at 634. Although “situations may arise where an extremely tenuous connection to the estate would not satisfy the jurisdictional requirement” of Section 1334(b), Robinson v. Mich. Consol. Gas Co., Inc., 918 F.2d 579, 584 (6th Cir.1990), Congressional intent was “to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate.” Celotex Corp. v. Edwards, — U.S.-,-, 115 S.Ct. 1493, 1499, 131 L.Ed.2d 403 (1995) (citations omitted).
The definition of a “related” proceeding under Section 1334(b) was first articulated by the Third Circuit in Pacor. As stated in that case, the “usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.” Pacor, 743 F.2d at 994. An action is “related to bankruptcy if the outcome could alter the debtor’s rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.” Id. A proceeding “need not necessarily be against the debtor or against the debtor’s property” to satisfy the requirements for “related to” jurisdiction. Id. However, “the mere fact that there may be common issues of fact between a civil proceeding and a controversy involving the bankruptcy estate does not bring the matter within the scope of section [1334(b) ].” Id. (stating also that “judicial economy itself does not justify federal jurisdiction”). Instead, “there must be some nexus between the ‘related’ civil proceeding and the title 11 case.” Id.
Our Circuit adopted the Pacor test for determining whether a civil proceeding is “related to” a bankruptcy proceeding under Section 1334(b) in Robinson, 918 F.2d at 583 (noting in doing so that circuit courts have “uniformly adopted an expansive definition of a related proceeding under section 1334(b)”). The majority of our sister circuits have likewise adopted the Pacor test for “related to” jurisdiction. See In re G.S.F. Corp., 938 F.2d 1467, 1475 (1st Cir.1991); In re Gardner, 913 F.2d 1515, 1518 (10th Cir.1990); In re Lemco Gypsum, Inc., 910 F.2d 784, 788 and n. 19 (11th Cir.1990); In re Fietz, 852 F.2d 455, 457 (9th Cir.1988); In re Wood, 825 F.2d 90, 93 (5th Cir.1987); In re Dogpatch, U.S.A., Inc., 810 F.2d 782, 786 (8th Cir.1987); A.H. Robins Co. I, 788 F.2d at 1002 n. 11. According to the Supreme Court, the Second and Seventh Circuits have adopted slightly different tests for determining whether Section 1334(b) jurisdiction exists. Celotex, — U.S. at —— n. 6, 115 S.Ct. at 1499 n. 6 (citing UNR Indus., Inc. v. Continental Casualty Co., 942 F.2d 1101, 1103 (7th Cir. 1991), cert. denied 503 U.S. 971, 112 S.Ct. 1586, 118 L.Ed.2d 305 (1992) and In re Turner, 724 F.2d 338, 341 (2d Cir.1983)).
In addition, the Supreme Court recently cited Pacor with approval in addressing the broad scope of the jurisdictional grant in Section 1334(b). The Court stated:
Congress did not delineate the scope of “related to” jurisdiction, but its choice of words suggests a grant of some breadth. The jurisdictional grant in [Section] 1334(b) was a distinct departure from the jurisdiction conferred under previous acts, which had been limited to either possession of property by the debtor or consent as a basis for jurisdiction. We agree with the views expressed by the Court of Appeals for the Third Circuit in Pacor that “Congress intended to grant comprehen *490 sive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate,” and that the “related to” language of [Section] 1334(b) must be read to give district courts (and bankruptcy courts under [Section] 157(a)) jurisdiction over more than simple proceedings involving the property of the debtor or the estate.
Celotex, — U.S. at---, 115 S.Ct. at 1498-99 (citations omitted) (recognizing at the same time that a bankruptcy court’s jurisdiction cannot be limitless). The Court also stated that proceedings “related to” a bankruptcy proceeding include “suits between third parties which have an effect on the bankruptcy estate.” Id. at - n. 5, 115 S.Ct. at 1499 n. 5 (citing 1 Collier on Bankruptcy If 3.01[l][c][iv], pp. 3-28 (15th ed.1994)). With these standards in mind, we turn to an examination of whether subject matter jurisdiction exists pursuant to Section 1334(b) over joint claims pending against Dow Corning and the various nondebtor defendants.
In their briefs and at oral argument, Dow Coming, Dow Chemical, Corning Incorporated, Minnesota Mining, Baxter and Bristol-Myers Squibb proposed several theories for the existence of Section 1334(b) subject matter jurisdiction over certain breast implant claims pending against the nondebtor defendants, no one of which has been clearly determined to definitively confer “related to” jurisdiction under Section 1334(b). Specifically, the defendants argued that contingent claims for contribution and indemnification, jointly-held insurance policies,[8] the possibility of collateral estoppel with a corresponding increased exposure to liability, and the burden of defending against the overwhelming number of breast implant claims all give rise to the possibility that the Dow Corning estate will be seriously impacted if the claims at issue, all of which to some degree affect the reorganization of Dow Coming under Chapter 11, are permitted to proceed in separate forums nationwide. We believe two of these theories support a finding that the district court has “related to” jurisdiction over the claims at issue, and address them in turn.[9]
1. Claims for Contribution and Indemnification
Dow Corning, Dow Chemical and Coming Incorporated argue that the district court erred in its determination that “related to” jurisdiction does not exist over certain breast implant claims asserted against Dow Chemical and Coming Incorporated because, in addition to the claims asserted by the personal injury claimants, Dow Chemical and Corning Incorporated have asserted cross-claims against each other and Dow Corning in the underlying litigation, which will have an effect on the bankruptcy estate.[10] Minnesota Mining, Baxter, and Bristol-Myers Squibb argue that, despite the fact that they have not yet filed contribution and indemnification claims or proofs of claim relating to implant litigation in Dow Coming’s bankruptcy case, they have contingent claims for contribution and indemnification that will have a conceivable effect on the bankruptcy proceedings. Minnesota Mining, Baxter, and Bristol-Myers Squibb therefore argue that the breast implant claims covered by their Section 157(b)(5) motions will give rise to thousands of claims against Dow Corning for indemnification and contribution. In addition, the nondebtor defendants claim that Dow Corning may itself have claims against them for contribution and indemnification under theories of joint and several liability. *491 The companies argue that these claims need to be resolved as part of Dow earning’s bankruptcy proceedings and reorganization plan, and certainly will affect the debtor’s rights, liabilities, options, and freedom of action in the administration of its estate.
Relying on Pacor, the district court rejected this basis for “related to” jurisdiction and held that the possibility of contribution or indemnification should only be regarded as relevant if and when judgments are actually entered against the nondebtors. The district court stated:
In the instant case, as in Pacor, there will be no contingent claim by the Shareholders against the debtorfor indemnification until such time as a judgment is rendered and, then, the non-debtors would still have to proceed with an entirely separate proceeding in order to obtain indemnification from the Debtor under 11 U.S.C. § 502.
Pacor involved John and Louise Higgins’ claim against the Philadelphia Asbestos Co. (Pacor) in state court seeking damages allegedly caused by Mr. Higgins’ work-related exposure to asbestos supplied by the company. In response, Pacor filed a third-party complaint impleading the Johns-Manville Corporation, which Pacor claimed was the original manufacturer of the asbestos. After Johns-Manville filed for Chapter 11, a dispute ensued as to whether the Higgins-Paeor action was “related to” the Manville bankruptcy so that the entire controversy could be removed to bankruptcy court. The Third Circuit held that the primary Higgins-Paeor action would not affect the Manville bankruptcy estate, and therefore was not “related to” the bankruptcy proceedings. The court stated that the Higgins-Paeor action was, “[a]t best, a mere precursor to the potential third party claim for indemnification by Paeor against Manville,” and held that, because all issues with regard to Manville’s possible liability would be resolved in a subsequent third party impleader action, “there would be no automatic creation of liability against Manville on account of a judgment against Pacor.” Pacor, 743 F.2d at 995 (stating also that “[t]here would therefore be no effect on administration of the estate, until such time as Pacor may choose to pursue its third party claim”). Thus, the court in Pacor viewed the absence of “automatic” liability on the part of the debtor as dispositive in determining that Section 1334(b) “related to” jurisdiction did not exist.
It has become clear following Pacor that “automatic” liability is not necessarily a prerequisite for a finding of “related to” jurisdiction. The Third Circuit itself has emphasized that:
A key word in [the] test is “conceivable.” Certainty, or even likelihood, is not a requirement. Bankruptcy jurisdiction will exist so long as it is possible that a proceeding may impact on “the debtor’s rights, liabilities, options, or freedom of action” or the “handling and administration of the bankrupt estate.”
In re Marcus Hook Dev. Park Inc., 943 F.2d 261, 264 (3d Cir.1991) (citation omitted).
Our Circuit has held that Section 1334(b) “does not require a finding of definite liability of [an] estate as a condition precedent to holding an action related to a bankruptcy proceeding.” In re Salem, 783 F.2d at 635. In In re Salem, our Court reversed a district court’s determination that it lacked Section 1334(b) subject matter jurisdiction over a proposed settlement order entered by the bankruptcy court. Prior to bankruptcy, Salem Mortgage Company and related debtor and nondebtor corporations acted as mortgage brokers. Salem and three related corporations filed voluntary petitions under Chapter 11 and the bankruptcy court ordered the petitions of the four debtors consolidated for administration. The Michigan Attorney General subsequently filed an adversary proceeding against the debtors and eight other defendants. The major parties in interest negotiated a stipulation for temporary class certification and a proposed final consent judgment, which was conditionally approved by the bankruptcy court. The bankruptcy court eventually entered a Proposed Order Approving Class Certification, Settlement of Class Action Litigation, and Entry of Consent Judgment. While reviewing the proposed order, the district court raised the question of whether it possessed “related to” subject matter jurisdiction over the adversary proceeding, and concluded it *492 did not. Our Court reversed that determination stating:
The proposed order in this ease provided that the plaintiff classes would release all claims against the debtors arising from the mortgage transactions except for claims concerning the alleged misappropriation of escrow funds. The order also provided that the debtors pay civil penalties under the Michigan Consumer Protection Act. The corporations’ penalties are to be subordinated to the claims of the general creditors. Resolution of the dispute, moreover, will affect the liability of the debtors to the investors. For example, to the extent the value of the mortgages is reduced by their reformation, the investors may have an action against the debtors such as breach of the assignment agreement. Because of the nature of these mortgage transactions, we hold that this dispute is sufficiently related to the estate of the bankrupt such that the district court had jurisdiction over the subject matter.
Id. at 634. The Court stated that the case was distinguishable from Pacor on the ground that a finding of definite liability of an estate is not a prerequisite to holding an action “related to” a bankruptcy proceeding, and because the parties in the mortgage transactions in the proceeding at issue were “more intertwined” than the parties in Pacor. Id. at 635.
This Court’s decision in In re Salem has been cited for the proposition that “when [a] plaintiff alleges liability resulting from the joint conduct of the debtor and non-debtor defendants, bankruptcy jurisdiction exists over all claims under section 1334.” In re Wood, 825 F.2d at 94 (citing In re Salem, 783 F.2d at 634). In re Wood involved a dispute among the directors/stoekholders of a medical clinic. Dr. Arthur Wood, III sued Dr. and Mrs. James Wood and Woodrow Barham for the wrongful appropriation of corporate assets. Before the filing of Dr. Arthur Wood’s single complaint against all three defendants, Dr. and Mrs. James Wood had filed a Chapter 11 petition. A dispute subsequently ensued as to whether the entire matter fell within bankruptcy jurisdiction. The Fifth Circuit held that the “complaint [was] sufficiently related to the pending bankruptcy to allow the district court to exercise jurisdiction under section 1334.” In re Wood, 825 F.2d at 93. The Court further stated:
The complaint against the bankruptcy debtors could have a conceivable effect on their bankruptcy. The plaintiff seeks to recover stock and monies that the debtors allegedly appropriated from the clinic. They seek to resolve the disputed allocation of interest in the clinic. To the extent that the debtors’ interest in the clinic, their stock holdings, or their withdrawals are now property of the estate, the complaint against them has a potential effect on their estate.
Id. at 93-94. The Court acknowledged the possibility that the complaint, which raised a post-petition claim, could ultimately have no effect on the bankruptcy proceeding. Unable, however, to conclude that the suit would have no conceivable effect on that proceeding, the court found “related to” jurisdiction as to both the debtor and nondebtor defendants, stating:
The plaintiff has filed one complaint against the defendants seeking liability for their joint conduct. Success against any of the defendants will have a potential effect on the estate. For example, if Dr. Wood and his wife are held liable but Barham is not, the bankrupt estate may bear the entire burden of the judgment. If, on the other hand, Barham is found jointly liable, the estate may bear only a portion of the judgment. Moreover, in filing othe complaint, the plaintiff challenged the combined actions of both the debtors and Barham, a non-debtor. Resolution of the dispute will necessarily involve, therefore, consideration of Barham’s involvement in those actions. We find support in the Court of Appeals for the Sixth Circuit and lower courts, which have held that when the plaintiff alleges liability resulting from the joint conduct of the debtor and non-debtor defendants, bankruptcy jurisdiction, exists over all claims under section 1334.
Id. at 94.
The degree of identity between a debtor and nondebtor codefendants was an impor *493 tant factor in A.H. Robins Co. I, a mass tort case involving the Daikon Shield, an intrauterine contraceptive device. In that case, A.H. Robins was faced with an overwhelming number of federal and state actions seeking damages for injuries allegedly sustained by the use of the Daikon Shield. The pending litigation caused A.H. Robins, the manufacturer of the device, to file a petition under Chapter 11 of the Bankruptcy Code. By the time A.H. Robins filed its petition, over 5,000 suits had been filed. More than half named A.H. Robins as the sole defendant, while a codefendant or codefendants were named in the others. When the filing of the petition automatically stayed all suits against A.H. Robins under Section 362(a), a number of plaintiffs in suits in which A.H. Robins was named along with at least one codefendant sought to sever their actions against A.H. Robins and proceed against the codefendant or eodefendants. A.H. Robins then sought injunctive relief restraining the prosecution of the actions against its codefendants. The district court granted a preliminary injunction, holding that all actions that might be satisfied from proceeds of the debtor’s products liability policy with Aetna Casualty and Insurance Company were stayed, and enjoined further litigation in eight civil actions.
Shortly after entry of the preliminary injunction, A.H. Robins moved for: a determination of trial venue of all Daikon Shield suits; identification of such eases as were “related to” the Chapter 11 case; and transfer of such eases to the Eastern District of Virginia for trial. The district court held that: (1) pursuant to Section 1334(b), all actions based upon personal injury tort or wrongful death claims arising from the use of the Daikon Shield were proceedings related to the Chapter 11 case; (2) pursuant to Sections 157(b)(5) and 1334(b), all such actions, wherever pending, were to be tried in the Eastern District of Virginia; (3) all actions related to the Chapter 11 case then pending in or subsequently removed to any federal district court during the pendency of the Chapter 11 case were to be transferred to the Eastern District of Virginia; and (4) the court was not prevented from later abstaining under Section 1334(c)(1) or remanding under Section 1452(b). This order and the preliminary injunction were both appealed to the Fourth Circuit.
In discussing the propriety of the stay issued against A.H. Robins’ nondebtor codefendants, the Fourth Circuit stated that, although Section 362(a)(1) is generally available only to a debtor, proceedings against nonbankrupt codefendants may be stayed by a bankruptcy court where there are “unusual circumstances.” A.H. Robins Co. I, 788 F.2d at 999. Such a situation arises when “there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor.” Id. The court stated that “an illustration of such a situation would be a suit against a third-party who is entitled to absolute indemnity by the debtor on account of any judgment that might result against them in the case.” Id. In addition, such a relationship may exist where codefendant liability is “directly attributable to the debtor.” Id. at 1004.
Based on the principles outlined above, we believe the district court has “related to” subject matter jurisdiction over the breast implant claims pending against the nondebt- or defendants in this ease. Thousands of suits asserted against Dow Corning include claims against the nondebtors, and the nature of the claims asserted establishes that Dow Corning and the various nondebtor defendants are closely related with regard to the pending breast implant litigation.[11] Dow *494 Chemical and Corning Incorporated have already asserted cross-claims against each other and Dow Corning in the underlying litigation, and the other nondebtor defendants have asserted repeatedly throughout their briefs, motions, and oral arguments that they intend to file claims for contribution and indemnification against Dow Corning, and we have no reason to doubt the veracity of those assertions at this time.
We find that it is not necessary for the appellees first to prevail on their claims against the nondebtor defendants, and for those companies to establish joint and several liability on Dow Coming’s part, before the civil actions pending against the nondebtors may be viewed as conceivably impacting Dow Coming’s bankruptcy proceedings. The claims currently pending against the non-debtors give rise to contingent claims against Dow Coming which unquestionably could ripen into fixed claims. The potential for Dow Coming’s being held liable to the non-debtors in claims for contribution and indemnification, or vice versa, suffices to establish a conceivable impact on the estate in bankruptcy. Claims for indemnification and contribution, whether asserted against or by Dow Coming, obviously would affect the size of the estate and the length of time the bankruptcy proceedings will be pending, as well as Dow Coming’s ability to resolve its liabilities and proceed with reorganization. In addition, we believe there is a qualitative difference between the single suit involved in Pacor and the overwhelming number of cases asserted against Dow Coming and the non-debtor defendants in this case. A single possible claim for indemnification or contribution simply does not represent the same kind of threat to a debtor’s reorganization plan as that posed by the thousands of potential indemnification claims at issue here.
Cognizant of the fact that “related to” jurisdiction cannot be limitless and concerned about granting benefits of the automatic stay in bankruptcy to solvent codefendants, we nevertheless believe the possibility of contribution or indemnification liability in this case is far from attenuated. We conclude that Section 1334(b) jurisdiction exists over the ' actions pending against Dow Chemical, Coming Incorporated, Minnesota Mining, Baxter, and Bristol-Myers Squibb that are the subject of the companies’ Section 157(b)(5) motions.
2. Joint Insurance
Dow Corning, Dow Chemical and Corning Incorporated also argue that “related to” jurisdiction exists as to claims pending against the shareholders because the three companies share joint insurance. We believe this argument provides additional support for the existence of “related to” jurisdiction under the unique facts of this case, but address it only briefly because we have already concluded that Section 1334(b) jurisdiction exists over breast implant claims pending against Dow Coming and one or both of its parents.
Dow Corning, Dow Chemical and Coming Incorporated are co-insured under various insurance policies, which together provide over $1 billion in coverage. Dow Coming’s interest in the policies is one of the largest assets of its bankruptcy estate. In addition, Dow Coming recently entered into ten new insurance settlements under which the estate will receive, if approved by the bankruptcy court, approximately $350 to $450 million in cash. Most of these settlements involve policies under which Dow Chemical or Corning Incorporated is a co-insured.
Dow Corning, Dow Chemical, and Corning Incorporated claim that the district court’s order, by allowing thousands of claims to proceed separately against Dow Chemical and Corning Incorporated, will diminish the value of this major bankruptcy asset to the extent that settlements, judgments and defense costs incurred by the shareholders will exhaust policy limits otherwise available to Dow Corning, its creditors, and individuals asserting claims in the bankruptcy proceedings. In addition, all three co-insureds argue that the policies will be further diminished if and when payments must be made to Minnesota Mining, Baxter, or Bristol-Myers *495 Squibb Dow Chemical has already notified insurers that it is asserting claims against the jointly-held policies on the ground that, as a co-insured, it is entitled to recover from the insurers all of its defense costs, as well as any settlements or judgments paid by it in litigating breast implant claims. The concern, then, is that permitting scores of trials against the shareholders to go forward while litigation against the debtor is stayed may result in the shareholders making claims for insurance and seeking and obtaining payment from the insurers before Dow Corning is able to make any claims of its own.
The district court rejected this argument for the existence of “related to” jurisdiction, holding that, while a bankruptcy court has broad discretion over a debtor’s interest in a liability insurance policy shared with a non-debtor, no judgment has been entered yet against Dow Chemical or Corning Incorporated and neither company has a claim pending against the insurance policies at this time. We believe the district court is in error because, as we stated earlier, an immediate impact on a debtor’s estate is not a prerequisite for Section 1334(b) jurisdiction. Under the facts of this case, we believe the possible depletion of insurance policies depends on contingencies sufficiently immediate to support a finding of “related to” jurisdiction. See, e.g., A.H. Robins Co. I, 788 F.2d at 1008 (stating that “irreparable harm would be suffered by the debtor and by the defendants since any of [the] suits against [the] co-defendants, if successful, would reduce and diminish the [debtor’s] insurance fund”); In re Zale Corp., 62 F.3d 746, 758-59 (5th Cir.1995) (concluding that, where disputes regarding an insurance policy can have an effect on a debtor’s estate, the bankruptcy court has “related to” jurisdiction over non-debtors’ claims against the insurer); Coar v. National Union Fire Ins. Co., 19 F.3d 247, 249 (5th Cir.1994) (stating that, where there is a “cognizable threat” that insurance policy proceeds would not cover plaintiffs’ claims and could expose the debtor’s estate to liability, a suit against a debtor’s insurer is “related to” the debtor’s bankruptcy case); In re Titan Energy, Inc., 837 F.2d 325, 329 (8th Cir.1988) (noting that the scope of a products liability insurance policy affects the size of a debtor’s estate for distribution).
Dow Coming’s interest in the insurance policies at issue is property of its estate under the expansive definition set forth in 11 U.S.C. § 541(a)(1). The threat posed to those insurance policies if claims pending against Dow Chemical and Coming Incorporated are permitted to go forward in a separate manner supports a finding of “related to” jurisdiction under Section 1334(b). The prospect of Dow Chemical and Corning Incorporated being able to assert mature, liquidated claims against the insurance proceeds if litigation pending against them is permitted to go forward demonstrates a conceivable impact on the bankruptcy proceedings. If it is determined that Dow Chemical or Corning Incorporated has a priority to the insurance proceeds, even if the bankruptcy court has the power to prevent payments of the proceeds while Dow Corning is in bankruptcy, the risk remains that the insurance coverage may be eviscerated when the proceeds are eventually distributed. In addition, certain of the policies cover defense expenses, and those costs alone may significantly reduce the pool of coverage available to Dow Corning if the claims pending against Dow Chemical and Coming Incorporated are allowed to proceed separately. In addition, the bankruptcy court has yet to determine whether it has the power to prevent Dow Coming’s eoinsureds from receiving proceeds of the jointly-held policies while Dow Coming is in bankruptcy. Resolution of the dispute over the right to proceeds alone will have a conceivable effect on Dow Coming’s bankruptcy proceedings.
IV.
We next address the power of the district court, sitting in bankruptcy, to fix the venue for the trial of personal injury tort and wrongful death claims asserted in non-bankruptcy forums pursuant to 28 U.S.C. § 157(b)(5). Section 157(b)(5) provides:
The district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim *496 arose, as determined by the district court in which the bankruptcy case is pending.
The purpose of Section 157(b)(5) is “to centralize the administration of the estate and to eliminate the ‘multiplicity of forums for the adjudication of parts of a bankruptcy ease.’ ” A.H. Robins Co. I, 788 F.2d at 1011 (citation omitted). Centralization of claims increases the debtor’s odds of developing a reasonable plan of reorganization which will “work a rehabilitation of the debtor and at the same time assure fair and non-preferential resolution of the ... claims.” Id.
It has been established that a “bankrupt debtor who is a defendant in a personal injury action may move under section 157(b)(5) to transfer the case to one of two venues: (1) the district where the bankruptcy is proceeding; or (2) the district where the claim arose.” In re Pan Am Corp. I, 16 F.3d at 516. The question for our consideration is whether Section 157(b)(5) allows for the transfer of personal injury and wrongful death claims pending against nondebtor defendants who have been sued with a debtor under claims of joint and several liability.
The Fourth Circuit has construed Section 157(b)(5) as permitting the transfer of such cases, and we follow that Circuit’s approach. In A.H. Robins Co. I, by the time A.H. Robins filed its Chapter 11 petition, 5,000 suits were pending against the company. More than half of those cases named A.H. Robins as the sole defendant, while a codefendant or codefendants were named in the others. After the district court issued a preliminary injunction against suits by A.H. Robins’ eodefendants, A.H. Robins moved for a determination of trial venue of all Daikon Shield suits, an identification of cases “related to” the bankruptcy case, and the transfer of those eases to the district court where the bankruptcy proceedings were being held for trial. The district judge held that, pursuant to Section 1334(b), all actions based upon personal injury tort or wrongful death claims arising from the use of the Daikon Shield were proceedings “related to” A.H. Robins’ Chapter 11 case and that, pursuant to Sections 1334(b) and 157(b)(5), all such actions, wherever pending, were to be tried in the Eastern District of Virginia. In addition, the district court held that all actions “related to” the Chapter 11 case then pending in any federal district court or subsequently removed to any federal district court during the pendency of A.H. Robins’ bankruptcy case were to be transferred to the Eastern District of Virginia.
In reviewing the validity of the district court’s order fixing the venue for the trial of all Daikon Shield cases and transferring such cases to the Eastern District of Virginia, the Fourth Circuit stated: “Unquestionably the district court in this case had the power under the statute to fix the trial venue in its district for all the Daikon Shield cases.” Id. at 1010 (stating also that the power of the district court to fix venue for all the pending Daikon Shield tort cases is “stated in unmistakable terms in section 157(b)(5)”). The Fourth Circuit stated its intent in consolidating the Daikon Shield litigation as follows:
Since the Daikon Shield litigation began, forty claims have actually been tried but over $517,000,000 have been expended in defending or settling Daikon Shield suits or claims. It is impossible to anticipate the stupendous costs that would be involved if all the claims here had to be tried. If the claimants as a whole are to realize reasonable compensation for their claims, it is obviously in the interest of the class of claimants as a whole to obviate the tremendous expense of trying these cases separately. If the bankruptcy court could arrive at a fair estimation of the value of all the claims and submit a fair plan of reorganization based on such estimation, with some mechanism for dispute resolution and acceptable to all interested parties, great benefit to all the claimants could be achieved and the excessive expense of innumerable trials, stretching over an interminable time, could be avoided. In addition, the real purpose of the proceedings (i.e., a reorganization of the debtor and its continuance as a going business) could be attained.
Id. at 1013 (footnote omitted). The court stated that these objectives could not be achieved until “all Daikon Shield claims and suits [were] centralized before a single forum where all interests [could] be heard and in *497 which the interests of all claimants with one another [could] be harmonized.” Id. at 1014. The court concluded by stating:
That undoubtedly was the purpose of the motion to fix venue and to transfer the pending suits to the district court sitting in bankruptcy before which the proceedings were pending. This unquestionably was the idea which prompted the district court to opt tentatively in his order fixing venue in the district court sitting in bankruptcy for all these claims. We approve of the idea and find it conducive of the interests of all concerned.
Id. at 1014.
We agree with the Fourth Circuit that Section 157(b)(5) should be read to allow a district court to fix venue for cases pending against nondebtor defendants which are “related to” a debtor’s bankruptcy proceedings pursuant to Section 1334(b).[12] This approach will further the prompt, fair, and complete resolution of all claims “related to” bankruptcy proceedings, and harmonize Section 1334(b)’s broad jurisdictional grant with the oft-stated goal of centralizing the administration of a bankruptcy estate.
V.
Finally, a Section 157(b)(5) motion “requires an abstention analysis.” In re Pan Am Corp., 950 F.2d 839, 844 (2d Cir.1991) (“In re Pan Am Corp. II ”). The abstention provisions of 28 U.S.C. § 1334(c) qualify Section 1334(b)’s broad grant of jurisdiction. In re Salem, 783 F.2d at 635. It is for the district court to “determine in each individual case whether hearing it would promote or impair efficient and fair adjudication of bankruptcy cases.” Id.
Section 1334 provides for two types of abstention: discretionary abstention under 28 U.S.C. § 1334(c)(1) and mandatory abstention under 28 U.S.C. § 1334(c)(2). Section 1334(c)(1) provides:
Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.
Section 1334(c)(2) states in relevant part:
Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a ease under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.
For mandatory abstention to apply, a proceeding must: (1) be based on a state law claim or cause of action; (2) lack a federal jurisdictional basis absent the bankruptcy; (3) be commenced in a state forum of appropriate jurisdiction; (4) be capable of timely adjudication; and (5) be a non-core proceeding. Non-core proceedings under Section 157(b)(2)(B) (i.e. liquidation of personal injury tort or wrongful death ease) are not subject to Section 1334(c)(2)’s mandatory abstention provisions pursuant to 28 U.S.C. § 157(b)(4).[13]
The district court in this case determined that Section 157(b)(4) rendered exempt from the mandatory abstention requirement all personal injury tort claims pending solely against Dow Corning, and decided not to abstain discretionarily with regard to those claims at this time. Because the district court found that it did not have subject matter jurisdiction over the claims pending against the nondebtor defendants, it did not address the abstention issue in detail and merely incorporated by reference its analysis of the abstention issue pertaining to claims pending solely against Dow Coming. It also remains to be fully determined whether the *498 abstention exception in Section 157(b)(4) applies to claims pending against nondebtor defendants and, if not, whether the factors calling for mandatory exemption under Section 1334(c)(2) have been met. The district court did not directly address these matters, and we refrain from addressing them in the first instance. Because we believe the district court is in a better position to make the necessary abstention determinations, as to both mandatory and discretionary abstention, we remand the case to the district court for further proceedings on this issue.
VI.
We REVERSE the district court’s determination that it lacked subject matter jurisdiction over the tort claims pending against the nondebtor defendants and that it did not have the power to transfer those claims pursuant to Section 157(b)(5). In addition, we REMAND this case to the district court for further proceedings on the issue of Section 1334(c) abstention.

. In this amended opinion, we adhere to our April 9, 1996 decision in this case, but seek to clarify the scope of our ruling and the impact we intend it to have. The opinion is therefore amended and reissued as follows.

. Baxter never designed, manufactured, or marketed breast implants, but is a defendant in personal injury actions as a result of certain corporate acquisitions and mergers. The Baxter implants were actually made by The Heyer-Schulte Company.

. The Bristol-Myers Squibb implants were made by a subsidiary, The Medical Engineering Corporation.

. It has since become clear that the original Global Settlement will not hold together because the sums provided are inadequate to fund the claims filed by over 100,000 plaintiffs. Unless a modified settlement is reached, thousands of opt-in plaintiffs and thousands of claimants who have yet to file actions are likely to file or reactivate individual suits against the breast implant defendants in both state and federal courts.

. Tide 28 U.S.C. § 157(b)(5) states: "The district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending.”

. Dow Coming’s motion sought a transfer of lawsuits against it and its shareholders which were not part of the global settlement. Dow Coming, Dow Chemical and Coming have stated that "thousands of the suits against Dow Coming have included claims against Dow Chemical and Coming, even though neither of those companies designed, manufactured, tested, or sold breast implants.” Brief for Dow Coming Corporation, The Dow Chemical Company, and Coming Incorporated at 9. The companies have explained that "[pjlaintiffs have generally alleged that the Shareholders are liable for Dow Coming's acts because they purportedly (1) negligently undertook Dow Coming's duties in connection with Dow Coming’s products, (2) aided and abetted Dow Coming's manufacture and sale of unsafe products, or (3) conspired with Dow Coming in the sale by Dow Coming of unsafe or inadequately tested products.” Id. at 9-10. Dow Coming’s transfer motion covered about one-third of the breast implant claims brought by opt-out plaintiffs against Dow Coming.

. The Minnesota Mining, Baxter, and Bristol-Myers Squibb motions were limited to personal injury actions in which Dow Coming was a named codefendant with one or more of those parties and the plaintiffs had opted out of the Global Settlement. According to Minnesota Mining, "when [Dow Coming] filed for chapter 11, [it] was a codefendant with [Minnesota Mining] in approximately 75% of implant cases against [Minnesota Mining] ... [i]n virtually every case, plaintiffs asserted claims of joint and several liability against [Minnesota Mining] and [Dow Coming] for the full amount of their asserted damages. ' Additionally, approximately 60% of the cases against [Minnesota Mining] involved plaintiffs who had received multiple sets of breast implants, in separate operations, including implants made by [Minnesota Mining] and at least one other manufacturer, which in most cases included [Dow Coming].” Brief for Minnesota Mining and Manufacturing Company at 6. The Baxter motion "covered personal injury *487 actions in which both the Debtor and Baxter were named defendants and the plaintiff had opted out of the Global Settlement.” Brief for Baxter Healthcare Corporation and Baxter International Inc. at 3. Baxter has stated that the actions in which "both the Debtor and Baxter are defendants number more than 5,000 ... in most of which the Debtor and Baxter are alleged to be joint tortfeasors and jointly and severally liable for the damages asserted." Id. at 9. Bristol-Myers Squibb motion explained that the company sought to have the district court transfer the opt-out cases in which it was a named codefendant with Dow Coming. Brief for Bristol-Myers Squibb Company and Medical Engineering Corporation at 5. The Minnesota Mining, Baxter, and Bristol-Myers Squibb motions covered approximately two-thirds of the breast implant claims asserted by opt-out plaintiffs against Dow Coming.

. Dow Chemical and Coming Incorporated are co-insured with Dow Coming under various liability policies.

. In our original opinion, we addressed the two additional arguments proffered by the movants in support of their assertion that "related to’’ jurisdiction exists over claims pending against Dow Coming and the nondebtor defendants. Upon reconsideration, we believe our finding that "related to” jurisdiction exists is best supported by the contribution and indemnification and joint insurance theories.

. According to Dow Coming, Dow Chemical, and Coming Incorporated, the shareholders have asserted "thousands of cross-claims for indemnity and contribution against Dow Coming in breast implant suits.” (Brief for Dow Coming Corporation, The Dow Chemical Company, and Coming Incorporated at 21).

. The opt-out claims asserted against Dow Coming and the various nondebtor defendants generally can be divided into four categories: (i) "Multiple Implant Actions,” which are actions where plaintiffs received implants manufactured by both Dow Coming and one or more of the nondebtors; (ii) "Supplier Actions,” which involve claims against the nondebtors as manufacturers and claims against Dow Coming as the supplier of silicone materials to the nondebtors; (iii) "Conspiracy Actions,” which allege that Dow Coming and the nondebtors conspired to defraud the plaintiffs by fraudulently withholding material information regarding the hazards of breast implants; and (iv) "Form Complaint Actions,” which simply name Dow Coming and the nondebtors as defendants without making any specific allegations of individual wrongdoing. *494 (See Motion of Minnesota Mining and Manufacturing Company for an Order Pursuant to 28 U.S.C. § 157(b)(5) at 7).

. We note that our holding here is limited to the district court's ability to consider motions under 28 U.S.C. § 157(b)(5) with respect to the trial venue of the breast implant claims at issue.

. Section 157(b)(4) provides that "[n]on-core proceedings under section 157(b)(2)(B) of title 28, United States Code, shall not be subject to the mandatory abstention provisions of section 1334(c)(2)."