COMPETITIVE TECHNOLOGIES, INC., Plaintiff,

and

Board of Trustees of the University of Illinois, Plaintiff–Appellant,

v.

FUJITSU LIMITED and Fujitsu Hitachi Plasma Display Limited, Defendants–Appellees,

and

Fujitsu America, Inc., Fujitsu General America Corp., Fujitsu General Limited, and Fujitsu Microelectronics, Inc., Defendants.

No. 03–1380.

United States Court of Appeals, Federal Circuit.

DECIDED: June 30, 2004.

Morgan Chu, Irell & Manella LLP, of Los Angeles, CA, argued for plaintiff-appellant. With him on the brief were Joseph M. Lipner and Perry Goldberg. Of counsel was Dan Goldman.

Karen L. Hagberg, Morrison & Foerster LLP, of New York, NY, argued for defendants-appellees. With her on the brief were Preston Moore and Jun Tsutsumi. Of counsel was James Oliva, of Palo Alto, CA.

Before MAYER, Chief Judge, GAJARSA, and DYK, Circuit Judges.

DYK, Circuit Judge.

The Board of Trustees of the University of Illinois ("the University") brought suit against Fujitsu Limited; Fujitsu General Limited; Fujitsu Hitachi Plasma Display Limited; Fujitsu General America, Inc.; and Fujitsu Microelectronics, Inc. (collectively, "Fujitsu"), alleging that Fujitsu infringed U.S. Patent Nos. 4,866,349 (the "'349 patent") and 5,081,400 (the "'400 patent"). Fujitsu asserted affirmative defenses and counterclaims against the Universi-

ty.[1]  The University sought to have some of the counterclaims dismissed on Eleventh Amendment sovereign immunity grounds.  The United States District Court for the Northern District of California denied the University's motion to dismiss Counterclaims 6–11 but stated that "it may be necessary to revisit the question of [the University's] waiver of Eleventh Amendment immunity." *Competitive Techs. v. Fujitsu Ltd.*, 286 F.Supp.2d 1118, 1140 n. 15 (N.D.Cal.2003).  The University appealed, claiming that the district court's order was immediately appealable under the collateral order doctrine of *Puerto Rico Aqueduct & Sewer Authority v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993).  We dismiss the appeal for lack of jurisdiction.

## BACKGROUND

On December 21, 2000, the University filed suit together with its licensee, Competitive Technologies, Inc. ("CTI"), against Fujitsu in the United States District Court for the Central District of Illinois ("the Illinois district court"), alleging infringement of the '349 and '400 patents.  The action was stayed pending an investigation by the International Trade Commission ("ITC"), which was initiated with a complaint by the University and CTI.  After the ITC dismissed the complaint, the Illinois district court lifted the stay on September 25, 2001.  On April 2, 2002, the Illinois district court granted Fujitsu's motion to transfer the case to the United States District Court for the Northern District of California.  On May 22, 2002, Fujitsu filed its answer asserting affirmative defenses to the University's and CTI's patent infringement complaint, and bringing thirteen counterclaims against CTI. Among its affirmative defenses, Fujitsu asserted "misuse and attempted misuse of the patents," "unclean hands," and "inequitable conduct" by the University and CTI "as described in greater detail in [Fujitsu's] Counterclaims."  (J.A. at 315–16.) Counterclaims 1–5 were claims for declaratory judgments of invalidity, non-infringement, and unenforceability of the '349 and '400 patents;  Counterclaims 6–9 were state-law claims of breach of confidentiality, misappropriation of trade secrets, fraud, and negligent misrepresentation; Counterclaims 10 and 11 were claims of unfair competition based on the allegedly baseless filing by the University and CTI of the ITC action with respect to the '349 and '400 patents;  and Counterclaims 12 and 13 were claims of abuse of process in the ITC with respect to the '349 and '400 patents.[2]  The counterclaims (unlike the

---

1.  Only Fujitsu Hitachi Plasma Display Limited and Fujitsu Limited are counterclaimants for the pertinent counterclaims.  Like the district court and the parties, we refer to both the defendants and the counterclaimants as "Fujitsu."

2.  The district court provided the following summary of Fujitsu's counterclaims:

First Counterclaim:  Claim for declaratory judgment re invalidity of '349 Patent claims;

Second Counterclaim: Claim for declaratory judgment re non-infringement of '349 Patent claims;

Third Counterclaim:  Claim for declaratory judgment re invalidity of '400 Patent claims;

Fourth Counterclaim: Claim for declaratory judgment re non-infringement of '400 Patent claims;

Fifth Counterclaim:  Claim for declaratory judgment [sic] re unenforceability of '349/'400 Patents;

Sixth Counterclaim: Breach of confidentiality based on disclosure of information concerning "pendency and timing" of licensing negotiations between Competitive and Fujitsu;

Seventh Counterclaim: Misappropriation of trade secrets based on disclosure of information "concerning the existence, status, and/or substance of the confidential busi-

affirmative defenses) were originally only asserted against CTI, but Fujitsu amended its answer to include the University as a counterdefendant to all of its asserted counterclaims on October 2, 2002.[3] With respect to Counterclaims 6–9, Fujitsu alleged that CTI acted "with and for" the University, while, for Counterclaims 10 and 11, Fujitsu alleged that both CTI and the University acted "in bad faith" in filing the ITC action. (J.A. at 404–10.)

On October 18, 2002, the University filed a motion to dismiss Counterclaims 5–13, alleging, among other things, that Counterclaims 6–13 violated its Eleventh Amendment sovereign immunity.[4] In an order dated February 24, 2003, the district court held that it had supplemental jurisdiction over the asserted counterclaims. *Competitive Techs.*, 286 F.Supp.2d at 1142–43. Considering the claim of Eleventh Amendment immunity, the district court held the University is an "arm of the State" entitled to claim sovereign immunity.[5] *Id.* at 1134. However, it held that

the University had waived its sovereign immunity for Fujitsu's counterclaims because they were compulsory:

> The Court concludes that Fujitsu's counterclaims are based on the same underlying factual *allegations* as are its affirmative defenses. In particular, the factual allegations supporting Fujitsu's affirmative defense of unclean hands encompasses all of the conduct alleged in support of Counterclaims Six through Thirteen. Therefore, the Court holds that [the University] has waived its Eleventh Amendment immunity as to Counterclaims Six through Thirteen.

*Id.* at 1139 (emphasis in original). The district court further noted:

> The Court is also mindful that at this stage of the proceedings, it is impossible to know whether or not Fujitsu's affirmative defenses will be supported by the evidence. If the Court determines at a later stage of this case that Fujitsu's affirmative defenses are not supported by the evidence or are otherwise insuffi-

---

ness discussions" between Fujitsu and Competitive;

Eighth Counterclaim: Fraud based on allegedly intentional concealment of [ ] and on representation that [ ]

Ninth Counterclaim: Negligent misrepresentation based on same alleged misrepresentations as Eighth Counterclaim;

Tenth Counterclaim: Unfair competition re '349 Patent based on filing of patent infringement complaint before the ITC that was allegedly "baseless" and "without merit";

Eleventh Counterclaim: Unfair competition re '400 Patent based on filing of patent infringement complaint before the ITC that was allegedly "baseless" and "without merit";

Twelfth Counterclaim: Abuse of process re '349 Patent based on initiation of ITC proceeding, knowing '349 Patent was invalid and not infringed, for improper purposes, including to obtain a quick settlement and discovery through the ITC proceeding;

Thirteenth Counterclaim: Abuse of process re '400 Patent based on initiation of ITC pro-

ceeding, knowing '349 Patent was invalid and not infringed, for improper purposes, including to obtain a quick settlement and discovery through the ITC proceeding.

*Competitive Techs.*, 286 F.Supp.2d at 1125–26 (omissions of confidential material in original).

3. On November 19, 2002, the district court dismissed CTI as a plaintiff, but CTI remains a counterdefendant in the action.

4. The University admitted that it had waived its Eleventh Amendment sovereign immunity with respect to Counterclaims 1–5 (for declaratory judgments of invalidity, non-infringement, and unenforceability of the '349 and '400 patents) because they are compulsory counterclaims. *Competitive Techs.*, 286 F.Supp.2d at 1127 n. 9.

5. On appeal, Fujitsu does not raise the issue of whether the University is an "arm of the State."

cient as a matter of law, it may be necessary to revisit the question of [the University's] waiver of Eleventh Amendment immunity.

*Id.* at 1139 n. 15. The district court also denied the University's motion to dismiss Counterclaims 6–11 on the alternative ground that they did not state a claim upon which relief could be granted, *see* Fed.R.Civ.P. 12(b)(6), but it granted the University's motion to dismiss Counterclaims 12 and 13 (for abuse of process in the ITC) for failure to state a claim. *Competitive Techs.*, 286 F.Supp.2d at 1143–56. The district court dismissed Counterclaim 5 (for a declaratory judgment of unenforceability of the '349 and '400 patents) for failure to state a claim upon which relief could be granted, but only "to the extent that Fujitsu seeks a broader remedy" than a declaration of unenforceability of the patent based on the University's alleged patent misuse. *Id.* at 1161.

On March 11, 2003, the University appealed the district court's denial of the University's motion to dismiss Counterclaims 6–11, alleging that the district court erred in holding that the University had waived its Eleventh Amendment sovereign immunity with respect to those counterclaims. The district court stayed Counterclaims 6–11 against the University, but not CTI, pending this appeal. In an order dated July 31, 2003, which was corrected on August 8, 2003, the district court held, among other things, that claims 5–11 of the '349 patent are invalid for indefiniteness under 35 U.S.C. § 112, ¶ 2. *Competitive Techs. v. Fujitsu Ltd.*, 286 F.Supp.2d 1161, 1192 (N.D.Cal.2003). There is no issue with respect to Counterclaims 5, 12, or 13 or with respect to the validity of the claims of the '349 patent on this appeal.

## DISCUSSION

■ Although neither party in its briefs contests this court's jurisdiction, we are nonetheless obligated to determine whether we have jurisdiction over this appeal. "[E]very federal appellate court has a special obligation to 'satisfy itself ... of its own jurisdiction ...,' even though the parties are prepared to concede it." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986) (quoting *Mitchell v. Maurer*, 293 U.S. 237, 244, 55 S.Ct. 162, 79 L.Ed. 338 (1934)); *see also, e.g., Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 95, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998); *Co-Steel Raritan, Inc. v. Int'l Trade Comm'n*, 357 F.3d 1294, 1303 (Fed.Cir.2004); *Corus Group PLC v. Int'l Trade Comm'n*, 352 F.3d 1351, 1357 (Fed.Cir.2003). We conclude that we do not have jurisdiction.

I

■ The judgment of the district court is not final under 28 U.S.C. § 1291, and the district court has not issued the certificate required by either Federal Rule of Civil Procedure 54(b) or 28 U.S.C. § 1292(b). The University's theory is that we have jurisdiction under the *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), exception allowing appeals from certain collateral orders. In *Cohen*, pursuant to a state statute, the corporate defendant in a shareholder derivative action sought indemnity for the expenses and attorney's fees of its defense from the shareholder who had brought the action. *See id.* at 545, 69 S.Ct. 1221. The district court refused to apply the state statute, holding that it was not applicable in federal court. *See id.* The Supreme Court held that the district court's order refusing to apply the statute was not a final judgment. *Id.* at 545–46, 69 S.Ct. 1221. However, the Court created an exception to the final judgment rule, permitting immediate ap-

peals from orders that "fall in that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Id.* at 546, 69 S.Ct. 1221.

The Court subsequently restated the test for an appealable collateral order in *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 98 S.Ct. 2454; 57 L.Ed.2d 351 (1978), as follows: "To come within the 'small class' of decisions excepted from the final-judgment rule by *Cohen,* the order must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment." *Id.* at 468, 98 S.Ct. 2454.

The *Cohen* collateral order doctrine has special application where a defense of sovereign immunity has been asserted. In *Puerto Rico Aqueduct,* the Puerto Rico Aqueduct and Sewer Authority ("the Authority") moved to dismiss the suit against it, claiming that the Eleventh Amendment prohibited the suit because the Authority was an "arm of the State." *See* 506 U.S. at 141, 113 S.Ct. 684. The district court found that the Authority did not qualify for immunity "because of its ability to raise funds for payment of its contractual obligations which do not affect the Commonwealth's funds" and denied the motion to dismiss. *Id.* at 141–42, 113 S.Ct. 684. The Authority appealed, and the court of appeals dismissed the appeal for want of jurisdiction, holding that the order was not appealable because it was not a collateral order and because there was no final judgment. *See id.* at 142, 113 S.Ct. 684. The Supreme Court reversed, holding "that States and state entities that claim to be 'arms of the State' may take advantage of the collateral order doctrine to appeal a district court order denying a claim of Eleventh Amendment immunity." *Id.* at 147, 113 S.Ct. 684. Relying on its earlier decision in *Coopers & Lybrand,* the Court stated: "To come within the 'small class' of ... *Cohen,* the order must [1] conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] be effectively unreviewable on appeal from a final judgment." *P.R. Aqueduct,* 506 U.S. at 144, 113 S.Ct. 684 (quoting *Coopers & Lybrand,* 437 U.S. at 468, 98 S.Ct. 2454). The first of these requirements has not been satisfied here.

## II

The decision of the district court on the issue of sovereign immunity does not "conclusively determine" that question, and we therefore need not determine whether the second and third parts of the *Coopers & Lybrand* test are satisfied.

The parties agree that Counterclaims 6–11 would normally be barred by sovereign immunity, but Fujitsu argues that the University waived its sovereign immunity by bringing the patent infringement suit against Fujitsu. A state's Eleventh Amendment "sovereign immunity is 'a personal privilege which it may waive at pleasure.'" *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.,* 527 U.S. 666, 675, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999) (quoting *Clark v. Barnard,* 108 U.S. 436, 447, 2 S.Ct. 878, 27 L.Ed. 780 (1883)). For example, "when a state files suit in federal court to enforce its claims to certain patents, the state shall be considered to have consented to have litigated in the same forum all compulsory counterclaims, *i.e.,* those arising from the same transaction or occurrence that gave rise to the state's asserted claims." *Regents of*

*the Univ. of N.M. v. Knight,* 321 F.3d 1111, 1126 (Fed.Cir.2003); *see also Genentech, Inc. v. Eli Lilly & Co.,* 998 F.2d 931, 946 (Fed.Cir.1993), *overruled in part on other grounds by Wilton v. Seven Falls Co.,* 515 U.S. 277, 289, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995). The question is whether Counterclaims 6–11 are compulsory.

Here, the district court determined that "counterclaims should be considered compulsory when they are based on the same 'transaction or occurrence' as the plaintiff's causes of action *and* the affirmative defenses asserted in the action." *Competitive Techs.,* 286 F.Supp.2d at 1139 (emphasis in original). But it has not "conclusively determine[d]" whether Counterclaims 6–11 are compulsory. The University argued in the district court that these counterclaims are not compulsory because the affirmative defenses themselves should have been dismissed, urging that they "do not allege facts sufficient to constitute an affirmative defense or contain surplus allegations of fact which do not amount to a defense." *Id.* at 1140 n. 15.

The University devotes a substantial portion of its briefs on this appeal to strenuously rearguing this same question, urging that there is no basis for claims of patent misuse or unclean hands. With respect to Counterclaims 6–11, the district court refused to address the argument that Fujitsu's affirmative defenses "do not allege facts sufficient to constitute an affirmative defense or contain surplus allegations of fact which do not amount to a defense" because the argument was improperly raised in a reply brief. *Id.*

Fujitsu concedes that the sovereign immunity inquiry would be altered by any dismissal of its affirmative defenses by the district court as a result of such a finding, stating that "the question of [the University's] waiver of sovereign immunity may need to be revisited at a later stage in the proceedings (*e.g.,* if the counterclaims and affirmative defenses did not survive summary judgment)." (Br. of Defs.-Appellees at 28.)[6] The district court itself expressly noted that "it may be necessary to revisit the question of [the University's] waiver of Eleventh Amendment immunity" if it were to determine "that Fujitsu's affirmative defenses are not supported by the evidence or are otherwise insufficient as a matter of law." *Competitive Techs.,* 286 F.Supp.2d at 1139–40 n. 15. Until the district court resolves the issue of whether to dismiss some or all of Fujitsu's affirmative defenses, the University's entitlement to Eleventh Amendment sovereign immunity has not been "conclusively determine[d]."

Under such circumstances, we do not have jurisdiction over the district court's order under the *Cohen* collateral order doctrine. *See, e.g., Swint v. Chambers County Comm'n,* 514 U.S. 35, 42, 115 S.Ct. 1203, 131 L.Ed.2d 60 (1995). In *Swint,* the Supreme Court noted that "[t]he District Court planned to reconsider its ruling on [a] summary judgment motion before the case went to the jury." *Id.* As a result, the Court held, the order was not an appealable collateral order: "The ruling thus fails the *Cohen* test, which 'disallow[s] appeal from any decision which is tentative, informal or incomplete.'" *Id.* (quoting *Cohen,* 337 U.S. at 546, 69 S.Ct. 1221) (alteration in original). Similarly, in *Coopers & Lybrand,* the Supreme Court refused to apply the collateral order doctrine in part

---

6. Fujitsu also noted that, if the district court were to hold that any of Fujitsu's affirmative defenses were improper, "the easy solution is a motion to strike or other motion to remove the improper defense from the case, with relatedness of any counterclaims then to be judged without reference to the removed defenses." (Br. of Defs.-Appellees at 12.)

because the "order [wa]s subject to revision in the District Court." 437 U.S. at 469, 98 S.Ct. 2454. Our sister circuits have also held that the *Cohen* collateral order doctrine does not apply when the district court has expressly indicated that its decision is subject to reconsideration:

> [I]n order to meet the requirements of the first *Cohen* prong, the matter must have been finally disposed of so that its decision is not "tentative, informal or incomplete." While there is no simple formula to define finality, an order expressly subject to future reconsideration by the issuing court is generally thought to be nonappealable.

*In re "Agent Orange" Prod. Liab. Litig.*, 745 F.2d 161, 163–64 (2d Cir.1984) (quoting *Cohen*, 337 U.S. at 546, 69 S.Ct. 1221) (citations omitted); *see also, e.g., Metro Servs. Inc. v. Wiggins*, 158 F.3d 162, 165 (2d Cir.1998) ("Among other things, the requirement of finality ensures that appellate court resources are not dissipated on appeals which, in the fullness of time, are rendered unnecessary by the district court's revision of its own early rulings."); *Lusardi v. Xerox Corp.*, 747 F.2d 174, 177 (3d Cir.1984) ("[T]he conditional class certification here fails to meet the first prong of the *Cohen* rule, because it is subject to revision by the district court."); 15A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3911.1, at 372 (2d ed. 1992) ("Even if an order has been made, there is little justification for immediate appellate intrusion so long as there is a plain prospect that the trial court itself may alter the challenged ruling.").[7] Thus, because the district court's decision in its order is subject to reconsideration, we do not have jurisdiction over the order under the *Cohen* collateral order doctrine.

Considering the issue of waiver at this stage of the proceeding would be particularly inappropriate because the issues remaining for the district court to decide— the propriety of the affirmative defenses— are themselves intimately bound up with the merits. *Cf. Coopers & Lybrand*, 437 U.S. at 469, 98 S.Ct. 2454 (holding that issues that are "enmeshed in the factual and legal issues comprising the plaintiff's cause of action" are not appealable under the *Cohen* collateral order doctrine (quoting *Mercantile Nat'l Bank v. Langdeau*, 371 U.S. 555, 558, 83 S.Ct. 520, 9 L.Ed.2d 523 (1963))); *Cohen*, 337 U.S. at 546, 69 S.Ct. 1221 (requiring collateral orders to be "not of such an interlocutory nature as to affect, or to be affected by, decision of the merits of th[e] case").

Given our disposition, we do not decide whether the affirmative defenses and counterclaims should be dismissed on the merits.

## CONCLUSION

For the foregoing reasons, we dismiss this appeal for lack of jurisdiction.

*DISMISSED.*

## COSTS

No costs.

---

7. *But cf. Microchip Tech. Inc. v. U.S. Philips Corp.*, 367 F.3d 1350, 1355 (Fed.Cir.2004) (holding that section 16 of the Federal Arbitration Act, 9 U.S.C. § 16 (2000), "allows for appeal of orders denying motions to compel arbitration even when the issue of arbitrability has not been finally decided").